FILED
United States Court of Appeals
Tenth Circuit

December 11, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTHONY KENDALL, also known
as Cameron Anthony Kendall,

Defendant - Appellant.

No. 16-6344

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:16-CR-00022-R-1)**

---

Kyle E. Wackenheim, Research and Writing Attorney (William P. Earley,
Assistant Federal Public Defender, on the briefs), Office of the Federal Public
Defender for the Western District of Oklahoma, Oklahoma City, Oklahoma, for
Appellant.

William E. Farrior, Assistant United States Attorney (Mark A. Yancey, United
States Attorney, with him on the brief), Office of the United States Attorney,
Oklahoma City, Oklahoma, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit
Judges.

---

**TYMKOVICH**, Chief Judge.

Anthony Kendall pleaded guilty to forcibly assaulting a federal officer and inflicting a bodily injury in violation of 18 U.S.C. § 111(b). Kendall had two prior felony convictions: a federal conviction for aggravated assault while carrying a firearm and a conviction for assault on a District of Columbia police officer in violation of a local provision, D.C. Code 22-405(c).

At sentencing, the district court held all three of these convictions supported a career offender sentence enhancement because each constituted a crime of violence under the United States Sentencing Guidelines (USSG). Kendall contends the district court erred in so classifying his conviction under 18 U.S.C. § 111(b) in this case and his prior conviction under D.C. Code 22-405(c).

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Kendall's sentence because all three of his convictions constitute crimes of violence.

# I. Background

The Guidelines classify a defendant as a career offender if his current conviction constitutes a felony crime of violence and he has two prior convictions that likewise qualify as crimes of violence.[1] USSG § 4B1.1.

---

[1] The provision states in full: "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1.

-2-

This case arises from Kendall's conviction under 18 U.S.C. § 111(b) for forcibly assaulting a federal officer and inflicting a bodily injury. The presentence investigation report revealed that Kendall had two prior convictions, one for aggravated assault while armed and another for assault on a police officer in violation of D.C. Code § 22-405(c).

Section 111 provides in relevant part,

> **(a) In general**.--Whoever--
>
> **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> **(b) Enhanced penalty**.--Whoever, in the commission of any acts described in subsection (a), uses a *deadly or dangerous weapon* (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or *inflicts bodily injury*, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111 (emphasis added).

The D.C. Code provides,

> (b) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the

performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than $1,000, or both.

(c) A person who violates subsection (b) of this section and *causes significant bodily injury* to the law enforcement officer, or *commits a violent act* that creates a grave risk of causing significant bodily injury to the officer, shall be guilty of a felony and, upon conviction, shall be imprisoned not more than 10 years or fined not more than $10,000, or both.

D.C. Code § 22-405 (2009) (emphasis added).[2]

# II. Analysis

Kendall concedes aggravated assault while armed qualifies as a crime of violence, but argues 18 U.S.C. § 111 and D.C. Code § 22-405 do not constitute crimes of violence. Specifically, Kendall claims one can violate both statutes without the use, attempted use, or threatened use of violent physical force—the degree of force required to commit a crime of violence. Without those two convictions, he cannot qualify as a career offender. As we explain in turn, both provisions properly interpreted under controlling Supreme Court precedent qualify as crimes of violence.

---

[2] After Kendall's conviction, the statute was amended. "Assaults, resists, impedes, intimidates, or interferes with" was changed to just "assaults." D.C. Code 22-405 (2017).

## A. Background Principles

Before we turn to the statutes, a brief review of the legal principles applicable to the career-offender enhancement will be helpful. The Guidelines define a crime of violence as any federal or state offense punishable by imprisonment for more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2. The Supreme Court explained that "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

To determine if a specific conviction constitutes a crime of violence, courts always apply the so-called categorical approach. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *United States v. Taylor*, 843 F.3d 1215, 1220 (10th Cir. 2016), *cert. denied*, 843 F.3d 1215 (2017).[3] The categorical approach focuses solely on the "elements of the statute forming the basis of the defendant's conviction"; the specific facts of the defendant's case are irrelevant. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). To apply the categorical approach, we compare the statute of conviction's elements to the

---

[3] Although the issue in this case is whether Kendall qualifies as a career offender under the Guidelines, we rely on cases under the Armed Career Criminal Act (ACCA) because the ACCA's definition of a crime of violence is virtually identical to the Guidelines' definition. *See United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015). We therefore "consistently appl[y] the same analysis" to both frameworks. *Id.*

Guidelines' definition of a crime of violence. *United States v. Titties*, 852 F.3d 1257, 1268 (10th Cir. 2017). If the "statute sweeps more broadly" than the Guidelines' definition of a crime of violence—that is, if someone *could* be convicted of violating the statute but *not* commit a crime of violence—the statute cannot categorically be considered a crime of violence. *Id.* at 1266. Put differently, if someone can violate the statute in many different ways, some of which meet the definition of a crime of violence and some of which do not, the statute does not constitute a crime of violence. *See id.*

To apply the categorical approach to a statute, then, we must first identify the statute's "elements." The definition of an element is straightforward: elements are the "constituent parts of a crime's legal definition . . . ." *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary (10th ed. 2014)). In other words, elements are what "the jury must find beyond a reasonable doubt to convict the defendant" at trial and "what the defendant necessarily admits when he pleads guilty." *Id.*

But determining a statute's elements can sometimes prove tricky for two related reasons. First, not everything in a statute is an "element." Some statutes, for instance, list examples of different ways one could violate the statute. *Id.* at 2253. Thus, a statute might require the "use of a 'deadly weapon' as an element of a crime and further provide[] that the use of a 'knife, gun, bat, or similar weapon' would all qualify" as a deadly weapon. *Id.* at 2249 (quoting *Descamps*,

-6-

133 S. Ct. at 2289). These examples are means, not elements, because "that kind of list merely specifies diverse means of satisfying a single element of a single crime . . . ." *Id.* Under this example, a jury could convict under the statute "even if some jurors 'conclude[d] that the defendant used the knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon.'" *Id.* (quoting *Descamps,* 133. S. Ct. at 2288).

*Mathis* offers three ways to distinguish elements and means. First, "if the statutory alternatives carry different punishments . . . [the alternatives] must be elements." *Id.* at 2256. But if a list within a statute "is drafted to offer illustrative examples," the examples are means. *Id.* Second, state-court decisions may answer the question for state statutes. *Id.* Third, courts can look to the indictment and the jury instructions; if either includes the statute's alternative terms, this "is as clear an indication as any that each alternative is only a possible means of commission, not an element." *See id.*

In addition to the elements/means complication, some statutes are divisible—that is, they define more than one crime. It is not enough, then, to just determine whether items listed in a statute are elements or means. We must also determine whether the listed elements define one crime or multiple crimes.

Applying the categorical approach to divisible statutes presents a problem. Because divisible statutes define multiple crimes, just looking at a statute's elements—as the categorical approach requires—does not tell us "which version

-7-

of the offense [the defendant] was convicted of." *Descamps,* 133 S. Ct. at 2284. We therefore have no way of knowing which set of elements to use when applying the categorical approach.

The modified categorical approach solves this problem. Under that approach, to determine which crime the defendant, in fact, committed—and in turn, which set of elements to use when employing the categorical approach—we can "consult record documents from the defendant's prior case[,]" such as the indictment, "for the limited purpose of identifying which of the statute's alternative elements formed the basis of the prior conviction." *Titties*, 852 F.3d at 1266. But critically, we "may use the modified approach *only* to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Descamps*, 133 S. Ct. at 2293 (emphasis added). After that analysis is done, we once again close our eyes to the actual facts underlying the defendant's conviction and apply the categorical approach.

## B. 18 U.S.C. § 111 is a Crime of Violence

Applying these principles to Kendall's conviction under 18 U.S.C. § 111, we conclude the statute is divisible as a whole. Subsection 111(a), however, is indivisible, and we assume without deciding § 111(b) is also indivisible. Then, we apply the modified categorical approach and determine Kendall violated § 111(b). Finally, under the categorical approach, we hold Kendall's felony § 111(b) conviction constitutes a crime of violence.

### 1. Divisibility and Elements versus Means

Section 111 as a whole is divisible. Kendall summarily asserts the statute as a whole is not divisible because "it defines only a single crime with a single set of elements . . . ." Aplt. Br. at 10. This is plainly wrong. When "statutory alternatives carry different punishments . . . they must be elements." *Mathis*, 136 S. Ct. at 2256. And as we explained in *United States v. Hathaway,* § 111 "contains three separate offenses, each *element of which* must be charged in the indictment and proven to the jury beyond a reasonable doubt." 318 F.3d 1001, 1007 (10th Cir. 2003) (emphasis added). Section 111 is therefore divisible as a whole.

Subsections (a) and (b), however, are not divisible. Subsection 111(a) is indivisible because the list in § 111(a)—forcibly assaults, resists, opposes, impedes, intimidates, or interferes with—contains means, not elements. 18 U.S.C. § 111(a). The Tenth Circuit's Criminal Pattern Jury Instructions for violating § 111(a) state the defendant must have "forcibly [assaulted] [resisted] [opposed] [impeded] [intimidated] or [interfered with] [the person described in the indictment]." § 2.09 at 82 (2011). And when jury instructions reiterate all the terms of a statute, this is "as clear an indication as any" the terms are just means of committing one element of the crime. *Mathis*, 136 S. Ct. at 2257.

We assume without deciding § 111(b) is indivisible because the government conceded this at oral argument. Oral Argument at 24:31 ("111(b)

adds the element of inflicting bodily injury or . . . using a deadly weapon, and we will concede for purposes of this case that those are means, rather than elements.").

Because § 111 is divisible as a whole but subsections (a) and (b) are not divisible, we must apply the modified categorical approach to determine which § 111 crime Kendall committed. The indictment charges Kendall with committing a § 111(b) felony.[4]

## 2. *Applying the Categorical Approach*

Now that we have established Kendall pleaded guilty to violating § 111(b), we must cast aside the actual facts of Kendall's conviction and apply the categorical approach to determine whether § 111(b) is a crime of violence. We do not write on a blank slate. Four circuits have held a violation of § 111(b) constitutes a crime of violence. *See United States v. Taylor*, 848 F.3d 476, 491–95 (1st Cir. 2017); *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2147; *United States v. Hernandez-Hernandez*, 817 F.3d 207, 214–17 (5th Cir. 2016); *United States v. Juvenile Female*, 566 F.3d 943, 947–48 (9th Cir. 2009). We find these opinions persuasive.

---

[4] More specifically, the indictment alleges Kendall "did knowingly and feloniously assault, resist, oppose, impede, intimidate, and interfere with J.W., a Senior Correctional Officer with the Federal Bureau of Prisons at the Federal Transfer Center, while J.W. was engaged in the performance of his official duties, and did thereby inflict bodily injury upon J.W. by striking J.W. in the face. All in violation of Title 18, United States Code, Section 111(a)(1) the penalty for which is found at Title 18, United States Code, Section 111(b)." R., Vol. I at 6.

Although one can violate § 111 in a number of ways—by assaulting, resisting, opposing, impeding, intimidating, or interfering with a designated official—every conviction under § 111 requires an assault. *See United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016). To determine if every violation of § 111(b) is a crime of violence, then, we need only determine whether both an assault that causes bodily injury and an assault with a deadly weapon involve the use, threatened use, or attempted use of violent physical force. They both do. As the Fifth Circuit explained, a "conviction under § 111(b) necessarily require[s] a finding [the defendant] intentionally used, attempted to use, or threatened to use physical force against the person of another . . . ." *Hernandez-Hernandez*, 817 F.3d at 217. We therefore conclude 18 U.S.C. § 111(b) constitutes a crime of violence.

### a. Assault that Causes Bodily Injury

An assault that causes bodily injury by definition involves the use of physical force. The Supreme Court in *Johnson* defined physical force as "violent force—that is, force capable of *causing physical pain or injury* to another person." 559 U.S. at 140 (emphasis added). The Tenth Circuit's Pattern Jury Instructions define bodily injury as "an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." § 2.09 at 82 (2011). Thus, an assault under § 111(b) that causes a painful bodily injury falls squarely within *Johnson*'s definition of violent physical force.

Kendall makes two arguments to avoid this conclusion.  First, he insists the Supreme Court in *United States v. Castleman* "declined to equate 'bodily injury' with 'violent physical force.'"  Aplt. Br. at 14.  But *Castleman* expressly did "not decide" whether causing a bodily injury under Tennessee law always involves the use of "violent force, under *Johnson*'s definition."  *See United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014).

More to the point, Kendall never explains how someone could inflict a bodily injury without using violent force.  Kendall points to our decision in *United States v. Ama*—in which we held someone can violate § 111(a) without using violent force—as proof someone can likewise violate § 111(b) without employing violent force.  684 F. App'x 736, 741 (10th Cir. 2017) (unpublished).  But more force is required to violate § 111(b), as Kendall did, than to violate § 111(a), as the defendant in *Ama* did.  Indeed, as the Fifth Circuit recently explained, "[t]he fact that the bodily injury element is included in § 111(b) but not in (a) indicates that § 111(b) requires a greater baseline showing of force—enough to cause bodily injury—than that required under § 111(a)."  *Hernandez-Hernandez*, 817 F.3d at 215.  And force significant enough to cause a painful bodily injury matches *Johnson*'s definition of violent physical force.

Second, Kendall cites *United States v. Perez-Vargas*, a pre-*Johnson* decision in which we held Colorado's third-degree assault statute—which prohibited knowingly or recklessly causing a bodily injury—did not qualify as a

-12-

crime of violence. 414 F.3d 1282, 1285 (10th Cir. 2005). In *Perez-Vargas*, we explained how the Guidelines focus on the means by which an injury occurs (through the use of physical force) while the third-degree assault statute, by contrast, focused on the result of a defendant's conduct—bodily injury. *Id.* at 1285–86. We therefore concluded that indirectly causing a bodily injury—by placing a barrier in front of a car, for example, rather than punching someone in the face—does not involve the use of physical force. *Id.* Thus, Kendall argues an assault causing a bodily injury under § 111(b) does not use violent physical force as defined by *Johnson* because one can violate the statute by indirectly causing a bodily injury.

Our holding in *Perez-Vargas*, however, has been abrogated by the Supreme Court. In *Castleman*, the Court rejected the distinction set forth in *Perez-Vargas* between direct and indirect injury. *See* 134 S. Ct. at 1414–16. The Court clarified that "the knowing or intentional application of force is a 'use' of force. . . . That the harm occurs indirectly, rather than directly . . . does not matter." *Id.* at 1415. We recently concluded in *United States v. Ontiveros* that "[t]o the extent that *Perez-Vargas* holds that indirect force is not an application of physical force" in the crimes of violence context, "that holding is no longer good law." No. 16-1362, 2017 WL 5147257, at *4 (10th Cir. Nov. 7, 2017).

### b. Assault with a Deadly or Dangerous Weapon

Finally, our recent decision in *United States v. Taylor* demonstrates that an assault with a deadly or dangerous weapon qualifies as a crime of violence. 843 F.3d 1215, 1220 (10th Cir. 2016). In *Taylor*, the defendant violated an Oklahoma statute that provided: "[e]very person who, with intent to do bodily harm . . . commits any assault . . . upon the person of another with any sharp or dangerous weapon . . . is guilty of a felony." Okla. Stat. tit. 21, § 645 (1991). We held "the additional element of a deadly or dangerous weapon makes an apprehension-causing assault a crime of violence, even if the simple assault would not be." *Taylor*, 843 F.3d at 1224 (citing *United States v. Mitchell*, 653 F. App'x 639, 645 (10th Cir. 2016) (unpublished)). Here, as in *Taylor*, one can violate § 111(b) by committing an assault with a deadly weapon. Thus, violating § 111(b) in this manner involves the use of violent physical force.

And, as the government correctly points out, this conclusion is consistent with our recent conclusion in *Titties*. 825 F.3d at 1257. In *Titties*, the statute prohibited pointing a gun at someone for the purpose of discharging the weapon, injuring someone, or whimsy, humor or prank. *Id.* at 1262 n.2. We held the statute did not qualify as a crime of violence because pointing a gun at someone for the purpose of humor or prank is non-violent. *Id.* at 1273–75. But unlike the statute in *Titties*, the Supreme Court long ago explained that violating § 111 requires "an intent to assault." *United States v. Feola*, 420 U.S. 671, 684 (1974).

-14-

An intent to assault is incompatible with jokes or pranks, so *Titties* is not on point.

### C. D.C. Code § 22-405 is a Crime of Violence

Finally, turning to D.C. Code § 22-405, we first conclude the statute is divisible as a whole, but subsections (b) and (c) are indivisible. Then, we apply the modified categorical approach and determine Kendall was convicted of violating § 22-405(c). Applying the categorical approach, we conclude § 22-405(c) constitutes a crime of violence.

### 1. Divisibility and Elements versus Means

Kendall claims D.C. Code § 22-405 is not divisible as a whole. But as we explained above, when "statutory alternatives carry different punishments . . . they must be elements." *Mathis*, 136 S. Ct. at 2256. D.C. Code § 22-405 is thus divisible as a whole.

Subsections (b) and (c), however, are each indivisible. That is, both sections contain various means of committing a single crime—either a subsection (b) or subsection (c) violation. When the indictment "reiterat[es] all the terms of" the statute, this is "as clear an indication as any" the listed items are only possible means of violating the statute. *Mathis*, 136 S. Ct. at 2257. And the indictment charging Kendall with violating D.C. Code § 22-405 does just that. On § 22-405(b), the indictment alleges Kendall "did assault, resist, oppose, impede, intimidate, and interfere with" a law enforcement officer and "caused significant

-15-

bodily injury to [the officer] or committed a violent act that created a grave risk of bodily injury to [the officer]." App. at 10. And on § 22-405(c), the indictment states Kendall "caused significant bodily injury . . . *or* committed a violent act that created a grave risk of serious bodily injury . . . ." *Id.* (emphasis added). Subsection (b) and (c) are therefore both indivisible.

Because D.C. Code § 22-405 is divisible as a whole, we must first apply the modified categorical approach to determine which crime Kendall committed. This is easily done since the indictment charges Kendall with violating D.C. Code § 22-405(c).

### 2. *Applying the Categorical Approach*

Applying the categorical approach, § 22-405(c) can be violated in two ways: one must, without just cause, assault, resist, oppose, impede, intimidate, or interfere with a law enforcement officer performing his duties and in doing so either (1) cause significant bodily injury to the officer, or (2) commit a violent act that creates a grave risk of causing significant bodily injury to the officer. Violating the statute in either manner will always involve the use, threatened use, or attempted use of violent physical force. We therefore conclude D.C. Code § 22-405(c) constitutes a crime of violence.

### a. *Causing a Significant Bodily Injury*

The question of whether violating § 22-405(c) by causing a bodily injury always involves the use of force begins and ends with *Johnson*'s definition of

violent physical force: force "capable of causing physical injury to another person." 559 U.S. at 140. A conviction for violating § 22-405(c) by causing bodily injury thus perfectly matches *Johnson*'s definition.

Kendall once again hangs his entire case on *Perez-Vargas* and the fact that one can violate D.C. Code § 22-405(c) by causing a bodily injury indirectly. But as we already explained, *Perez-Vergas* was abrogated by the Supreme Court.

### b. *Committing a Violent Act*

Committing a violent act that creates a grave risk of causing significant bodily injury will always involve the use of violent physical force. The question turns on how we define a violent act. And the dictionary definition of "violent" demonstrates a violent act will always involve the use of physical force. Black's Law Dictionary offers three definitions of violent: (1) of, relating to, or characterized by strong physical force; (2) resulting from extreme or intense force; (3) vehemently or passionately threatening. *Violent*, Black's Law Dictionary (10th ed. 2014). All three of these definitions fall squarely with USSG § 4B1.2's definition of a crime of violence—the use, attempted use, or threatened use of violent physical force. *Johnson*, 559 U.S. at 140. The plain meaning of "violent act" thus illustrates how committing a violent act that creates a grave risk of causing significant bodily injury will always involve the use, attempted use, or threatened use of violent physical force.

In sum, D.C. Code § 22-405(c) constitutes a crime of violence.

### III. Conclusion

The district court properly found Kendall's convictions under 18 U.S.C. § 111(b) and D.C. Code § 22-405(c) qualify as crimes of violence. Because Kendall concedes his other prior conviction constitutes a crime of violence, the district court correctly classified him as a career offender under the Guidelines.

We accordingly AFFIRM.