PHILLIPS, J., concurring and dissenting.
I agree with the majority's disposition of the supervised-release issue. But I disagree with its applying the invited-error rule to defeat Jereb's meritorious plain-error argument concerning the disputed jury instruction.
Plain Error
On appeal, Jereb challenges his conviction for forcibly opposing[1] a federal officer acting in the course of his duties, as charged under 18 U.S.C. § 111(a)(1), (b).[2] With the parties' assent, the district court instructed the jury on what the parties and court thought were the elements of the crime. Unsurprisingly, the instruction tracked the statute, which forbids "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], or interfer[ing]" with a federal officer. See 18 U.S.C. § 111(a). In accordance with the practice in our circuit, the district court did not additionally instruct the jury that forcibly resisting, opposing, impeding, intimidating, or interfering with a federal officer required concomitant proof of an assault. But after Jereb's trial, our circuit began requiring that the government prove assault in addition to proving any of the other five listed acts. See United States v. Kendall , 876 F.3d 1264, 1270 (10th Cir. 2017) (acknowledging that "one can violate § 111 in a number of ways" and concluding that "every conviction under § 111 requires an assault"); United States v. Wolfname , 835 F.3d 1214, 1218 (10th Cir. 2016) ("[b]ecause a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering must fall into one of ... two categories [simple assault or "all other cases" assault,] a conviction for any of these acts necessarily involves-at a minimum-simple assault."). Though we decided Kendall and Wolfname after Jereb's trial, he gets the benefit of those rulings because his case is on direct appeal. Griffith v. Kentucky , 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
Because Jereb did not object on the ground that the jury needed to find that he assaulted the officer in addition to forcibly opposing him, we review this legal challenge for plain error. Under the plain-error standard, Jereb must establish that "(1) an error occurred; (2) the error was plain; (3) the error affected [his] substantial *1348 rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." Wolfname , 835 F.3d at 1217 (quoting United States v. Makkar , 810 F.3d 1139, 1144 (10th Cir. 2015) ).
Here, Jereb easily satisfies the first two prongs of the analysis. Under Kendall , the district court plainly erred by not requiring the jury to find that Jereb had assaulted the federal officer in addition to opposing him. See Kendall , 876 F.3d at 1270 (citing Wolfname , 835 F.3d at 1218 ). At the third prong, Jereb should also prevail. To show substantial prejudice, he "must demonstrate 'a reasonable probability that but for the error claimed, the result of the proceeding would have been different.' " United States v. Hill , 749 F.3d 1250, 1263 (10th Cir. 2014) (quoting United States v. Trujillo-Terrazas , 405 F.3d 814, 819 (10th Cir. 2005) ). The jury declined to find that Jereb had assaulted the officer. Thus, had the district court properly instructed the jury, the government necessarily would have failed to show that Jereb assaulted the officer in addition to opposing him.
Finally, at the fourth prong, we have discretion to notice the forfeited error. United States v. Olano , 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " (alteration in original) (quoting United States v. Atkinson , 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) ) ). Though we will not always notice the error resulting from failing to instruct the jury on an essential element of the crime, "we have before noted that reversal is appropriate when evidence supporting the omitted element is 'neither overwhelming nor uncontroverted.' " United States v. Benford , 875 F.3d 1007, 1021 (10th Cir. 2017) (quoting Wolfname , 835 F.3d at 1223 ). Here, as stated, the evidence is the opposite of overwhelming-the jury declined to find that Jereb had assaulted the federal officer. For those reasons, I would conclude that Jereb has met his burden under the plain-error standard and deserves reversal of his 18 U.S.C. § 111(a)(1), (b) conviction.
Invited Error
For two reasons, I disagree with the majority's view that Jereb invited the error identified above.
First, at the time of Jereb's trial, the settled law and pattern jury instruction in our circuit favored the instruction the parties offered. Before Wolfname , which we decided four months after Jereb's trial, our circuit had treated each of the listed ways of violating § 111 (the defendant "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" the federal officer) as "assault" in applying the penalty. See, e.g. , United States v. Sherwin , 271 F.3d 1231, 1233 (10th Cir. 2001) (referring to a charge under § 111(a)(1), (b) with the six methods of committing the crime as "one count of assaulting federal officers"); United States v. Afflerbach , 754 F.2d 866, 868-69 (10th Cir. 1985) (affirming a conviction for "forcibly interfering with a federal officer without the use of a deadly weapon," apparently without a jury finding that the defendant had assaulted the federal officer while interfering with him); United States v. Linn , 438 F.2d 456, 458 (10th Cir. 1971) (affirming a conviction, apparently without a special verdict, on a charge listing all six methods of committing the offense and commenting that "[o]ne of the elements of the offense proscribed by § 111 is that the federal officer assaulted be engaged in the performance of his official duties and not on a frolic of his own"); Taylor v. United States , 334 F.2d 386, 388 (10th Cir. 1964) (affirming a conviction, *1349 apparently with no special verdict, on a charge listing all six methods of committing the offense and generally describing the offense as assault).
This matters because a defendant cannot invite error by providing a district court settled circuit law. See United States v. Titties , 852 F.3d 1257, 1264 n.5 (10th Cir. 2017). The question thus becomes whether any authority unsettled this law before Jereb's trial. The government contends that United States v. Hathaway , 318 F.3d 1001 (10th Cir. 2003), did so.[3] I disagree.
In evaluating whether Hathaway changed the settled law in our circuit on the concomitant-assault issue, we need to read Hathaway without the benefit of later interpretations of it in Wolfname and Kendall . By backing the analysis to the time of Jereb's trial, and not fast-forwarding to Wolfname , a different picture emerges. If relying just on Hathaway , contemporary readers would have seen that the government charged that Hathaway "did knowingly and intentionally forcibly assault, resist, oppose, impeded [sic], intimidate, and interfere with" a federal officer. Id . at 1004. They would also have seen that Hathaway characterized the conviction as "a single count of forcibly assaulting a federal officer in violation of 18 U.S.C. § 111(a)." Id . at 1003. And they would have seen that the court nowhere said that the five non-assault statutory methods of committing the crime required assault. Instead, they would have seen that the court simply went along with Mr. Hathaway's desire to retain his misdemeanor-assault conviction, once the court had concluded that the government had not proved felony assault. See id. at 1010. Finally, they would have seen that Hathaway neither mentioned nor explained language from the Supreme Court bearing on the possibility of a concomitant-assault requirement (further suggesting, to me, that Hathaway wasn't deciding that issue). In United States v. Feola , 420 U.S. 671, 682 n.17, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court noted that 18 U.S.C. § 111"outlawed more than assaults. It made it a criminal offense 'forcibly [to] resist, oppose, impede, intimidate, or interfere with' the named officials while in the performance of their duty."
In mentioning these points, I seek just to show that invited error is strong medicine to administer when Jereb (and the government and district court) could have reasonably believed-if ever contemplating it-that Hathaway did not require the government to prove concomitant assault as part of proving each of the five non-assault-specific statutory means of committing the crime.
I acknowledge that four months after Jereb's trial, the court in Wolfname culled *1350 from Hathaway an "implicit" holding that assault must be proved as part of any conviction under § 111(a)(1). 835 F.3d at 1218 (adding that "[t]rue, we didn't explicitly state in Hathaway that the government must prove assault when it alleges a defendant violated § 111(a)(1) by resisting, opposing, impeding, intimidating, or interfering with-rather than assaulting-an officer"). But for the reasons given, I believe that at the time of Jereb's trial, Hathaway reasonably could have been read as being consistent with the long line of Tenth Circuit cases cited above, which affirmed § 111 convictions without jury findings of assault. In fact, Hathaway offers the government even less help than do those earlier cases; after all, the defendants in those cases, unlike Mr. Hathaway, were not advocating for an assault conviction.
So whatever the merits of Wolfname 's interpretation of Hathaway , I think the proper question is whether, in fairness, we can apply the invited-error doctrine here on grounds that Hathaway had obviously held that all § 111(a)(1) convictions require a jury finding of assault. In my view, transporting Wolfname 's interpretation of Hathaway back in time to Jereb's trial is unfair. Under pre- Wolfname law, the instructions given here were correct.[4] Invited error should not have a hair trigger activated by Jereb's failure to anticipate that Wolfname would find an implicit holding in Hathaway mandating an additional instruction requiring the government to prove assault as part of proving the five non-assaultive methods, including "opposing." I can't see how Jereb invited error by offering our approved pattern jury instruction on the elements of § 111(a)(1), (b).
Second, I disagree with the majority that Jereb induced the district court to err.[5] See maj. op. at 1340. The majority points to the instruction Jereb offered as well as the one given to the jury with his assent. As mentioned, Jereb wanted the instruction because it required jury unanimity for at least one of the methods of violating § 111(a)(1).[6] That was his sole focus. Jereb obviously overlooked the possibility that the statute required the government to prove assault as part of the five otherwise-non-assaultive methods of committing the crime (any such requirement is hardly obvious from reading § 111, and that poorly drafted statute requires considerable straining to read it sensibly to any conclusion). Common sense tells me that Jereb didn't intentionally relinquish that argument. After all, he had every *1351 reason to add elements, especially tough-to-prove ones like assault. So I see forfeiture, not waiver. See Olano , 507 U.S. at 733, 113 S.Ct. 1770.
In concluding that Jereb invited the error he now complains of, the majority relies on United States v. Cornelius , 696 F.3d 1307 (10th Cir. 2012). See maj. op. at 1339-40. And indeed Cornelius says that "[u]nder the invited error doctrine, this Court will not engage in appellate review when a defendant has waived the right to challenge a jury instruction by affirmatively approving it at trial."[7] 696 F.3d at 1319. From this, the majority looks to the disputed jury instructions, and it notes that Jereb affirmatively approved them. Maj. op. at 1336-38. But the problem with this view is evident when we compare Jereb's case to Cornelius . In Cornelius , the issue complained of on appeal was exactly the one that the defendant had expressly adopted in the district court-namely, that enterprise is not an element of a RICO conspiracy charge. 696 F.3d at 1319-21. Here, by contrast, Jereb never adopted the position that assault is not an element of the other five methods of violating § 111(a)(1).
The majority also relies on United States v. LaHue , 261 F.3d 993 (10th Cir. 2001). See maj. op. at 1338-40. That case is similar to Cornelius in its differences from Jereb's case. In LaHue , as the majority recounts, defense counsel argued that the government had opened the door for them to mention in closing argument that the defendant-attorneys allegedly involved in the charged scheme had been acquitted. 261 F.3d at 1012. After the court agreed, defense counsel argued that the acquittals undermined the government's case against their clients. Id . After the jury convicted, though, defense counsel argued on appeal that the district court had erred by giving them what they wanted-specifically, they argued that by telling the jury about the defendant-attorneys' acquittal, the district court might have caused the jurors to wonder why the court had acquitted the attorneys but not the other defendants. Id . Unsurprisingly, we ruled that the invited-error doctrine applied in this circumstance. Id . at 1013. We found no prejudice, "because defendants' argument on appeal is a complete reversal from the position they sought to and did assert during closing argument." Id . This makes sense, because the defendants in LaHue had consciously decided to seek the very result they later complained about. By comparison, nothing suggests that Jereb induced the district court to commit the error of which he complains on appeal. Not foreseeing that the law would soon make the given instructions incomplete is a far different matter from spotting the incompleteness, seeking to take advantage of it in the district court, and when that didn't work out, reversing position on appeal.[8]
*1352 In my view, the majority has extended the invited-error doctrine beyond where we have previously applied it.[9] Until today, I see no cases imposing invited error on a defendant who had proceeded in accordance with our cases and pattern jury instructions, even where cases decided afterward declare that approach erroneous. The majority's rule goes too far, especially when plain error is evident. Unlike the defendants in the majority's cited cases, Jereb did not argue a legal position to seek a favorable result in the district court and later reverse his position to seek an advantage on appeal. From the outset, Jereb would have been much better off had he spotted the issue he now advances.

The Judgment states that the jury found Jereb guilty of "Assault on a Federal Officer." R. vol. 1 at 145. The jury left blank the spaces on the special-verdict form by which it could have found that Jereb had forcibly assaulted, forcibly resisted, forcibly impeded, forcibly intimidated, or forcibly interfered with the officer. Id . at 98.

In recounting the jury's findings, the majority says that "[t]he jury also convicted Mr. Jereb of violating 18 U.S.C. § 111(b)." Maj. op. at 1333. Because the government contends in its brief that subsection (b) is a stand-alone crime, I think we should clarify that the government in fact correctly charged the crime under 18 U.S.C. § 111(a)(1), (b), that is, that a conviction under § 111(b) requires proof of the elements contained in both subsections. If we don't, then we encourage the government to continue arguing this same point in future cases-relying on dicta arguments and the like. See Appellant's Br. at 27-33. I recognize that United States v. Kendall , 876 F.3d 1264, 1265 (10th Cir. 2017), referred to a "conviction under 18 U.S.C. § 111(b)," but I view this as a shorthand reference. After all, Kendall looked back to § 111(a)(1) 's six methods before declaring that assault is a required element of an enhanced penalty under subsection (b). Id . at 1270.

I admit to being taken aback that Jereb takes the same view. Appellant's Br. at 22. Jereb appears to believe that to prevail he must show that the error was plain at the time of trial. Id . ("At the time of Mr. Jereb's trial, the circuit authority was directly on point, and the statute was equally clear."). If so, then he is mistaken. New rules apply retroactively to cases pending on direct appeal. Griffith , 479 U.S. at 328, 107 S.Ct. 708. In any event, I disagree with the parties' view of Hathaway for the reasons given above. And I note that if Hathaway had required assault as an element of the other five acts, then the jury would have had to find this element beyond a reasonable doubt. See Patterson v. New York , 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("[Mullaney v. Wilbur , 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975),] surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."). But I see nothing suggesting that the jury found this element, or any showing of overwhelming proof of the missing element. Cf. United States v. Mann , 786 F.3d 1244, 1251-52 (10th Cir. 2015).

In fact, the § 111 instruction (found at section 2.09 of the Tenth Circuit Pattern Jury Instructions) has remained the same from its 2011 version through the 2017 amendments to the pattern instructions. Though the commentary to the pattern instruction discusses Hathaway -specifically, the holding that § 111 creates the three separate crimes-it does not mention any change by which the government has to prove assault as part of proving any of the means of violating the statute.

In my view, including inadvertent acts as inducements stretches "induce" beyond its meaning. See Oxford English Dictionary (online ed. 2018) (defining induce as "To lead (a person) by persuasion or some influence or motive that acts upon the will, to (into , unto ) some action, condition, belief, etc.; to lead on, move, influence, prevail upon (any one) to do something ."). I see nothing suggesting that Jereb induced the district court not to give a separate instruction requiring concomitant assault for each of the five other methods of committing the crime. No one contemplated that question. Again, the instructions given are correct (and remain in the current pattern jury instructions); they are just incomplete after Wolfname and Kendall .

In fact, Jereb did better than he should have on this point. As later announced in Kendall , 876 F.3d at 1269, the six methods are not elements but instead are means. So Jereb was not entitled to jury unanimity on any particular one of the statutory methods.

Later opinions also written by Judge Ebel help explain the boundaries of Cornelius . In United States v. Thornton , 846 F.3d 1110, 1117 & n.3 (10th Cir. 2017), the court declined to find invited error where a defendant had challenged a prison sentence whose lengthier term was motivated by treatment available in prison-even though the defendant had argued in the district court that he would be less dangerous to the public because of available prison treatment. The court clarified the meaning of invited error: "Invited error occurs when the party sought out or 'affirmatively approv[ed]' an errant outcome." Id . at 1117 n.3 (alteration in original) (quoting Cornelius , 696 F.3d at 1319 ). The court called invited error a species of waiver "because it requires intentional relinquishment of a right." Id. at 1117 n.3 (citing United States v. Rodebaugh , 798 F.3d 1281, 1304 (10th Cir. 2015) ).

One case that Titties relied on in its invited-error discussion is Ray v. Unum Life Insurance Co. , 314 F.3d 482 (10th Cir. 2002). See Titties , 852 F.3d at 1264 n.5. As do I, Ray considers it important to ask whether the party has switched to a directly contrary position on appeal. In Ray , "the parties had assumed in the district court that one legal standard applied, but the law changed after appellate briefing." Id. (citing Ray , 314 F.3d at 486 ). Ray says it well: "There is no evidence that on appeal Ray reverses a position she took at trial or that Ray induced the district court to apply an arbitrary and capricious standard; we do not see in the record even the slightest debate about which standard of review is appropriate." 314 F.3d at 486.

The closest case to doing so that I see is United States v. Sturm , 673 F.3d 1274 (10th Cir. 2012). In that case, the district court instructed the jury on the defendant's theory of the case-using the instruction proposed by the defendant. Id . at 1280. Under the defendant's instruction, the court instructed the jury that "the mere act of observing child pornography, without possession or receipt, is not illegal." Id . On appeal, for the first time, Sturm contended that by not defining "receives," the instruction risked the jury's thinking that searching for and viewing child pornography on the computer was "receipt" (which it then wasn't). Id . In this circumstance, we concluded that the defendant had invited the error. But Sturm differs from Jereb's case. In Sturm , the issue of "receives" and "receipt" was apparent, not hidden in a jumbled statute like 18 U.S.C. § 111(a)(1). And the defendant chose to deal with this known issue by informing the jury that observing child pornography without possession or receipt is not illegal. Id . So, unlike Jereb, Sturm had surveyed the landscape and chosen his route.