**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NADARIUS BARNES,

    Defendant - Appellant.

No. 24-3062

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:21-CR-20027-JAR-3)**

_____

Lisa Cordara of Arnold & Porter Kaye Scholer LLP, New York, New York (Catherine Langhans of Arnold & Porter Kaye Scholer LLP, New York, New York, Andrew T. Tutt of Arnold & Porter Kaye Scholer LLP, Washington, DC, and Edward K. Fehlig, Jr. of Fehlig Law Firm, Kansas City, Missouri, with her on the briefs), for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney, (Kate E. Brubacher, United States Attorney, and James A. Brown, Assistant United States Attorney, Chief, Appellate Division, with him on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **HARTZ**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Defendant-Appellant, Nadarius Barnes, appeals from his conviction pursuant

to a guilty plea for discharging a firearm during a crime of violence, 18 U.S.C.

§ 924(c).  Aplt. Br. at 3.  He also appeals from his above-guideline sentence.  Id.  We

have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

## Background

The parties are familiar with the facts, and we need not restate them at length

here.[1]  Briefly, on August 3, 2020, Kansas City Kansas Police Department

("KCKPD") responded to a drive-by shooting at a home belonging to the Butler

family, located on Farrow Avenue in Kansas City, Kansas.  II R. 13.  The Butler

brothers, G'Ante and Zarion Butler, lived at the home and were associated with the

"Tasha Gang."  Id.  Another Tasha Gang affiliate, Tamani Boykin, was injured

during the shooting.  Id.  The suspected shooter was Isaiah Shields, who was a

member of the rival "BBUx2 Gang."  Id.  Several KCKPD officers and ATF agents

went to Mr. Shields's residence on North Allis Street, where they took Mr. Shields

into custody before executing a search warrant on the home.  Id. at 14.  When exiting

the home around 11:20 p.m., the officers were fired upon by multiple shooters from

an alley west of the home.  Id.  One ATF agent was struck by a bullet in his hand and

a civilian-victim, J.B., was shot and injured in both of his hands.  Id.  Also damaged

in the gunfire were law enforcement vehicles and neighboring homes.  Id.  Over 100

shell casings were found in the alley west of the home.  Id.

Officers suspected that five individuals associated with the Tasha Gang were

responsible for the second shooting: Mr. Barnes, G'Ante Butler, Zarion Butler,

---

[1] For a more detailed account of the facts, see the decision in a companion
appeal, United States v. Butler, No. 24-3061.

2

Donnell Hall, and Chase Lewis.  Id. at 14–17.  They believed that the second shooting was carried out to retaliate against the BBUx2 Gang for the earlier shooting at the Butler family's home.  Id.  On June 7, 2021, Zarion Butler was arrested in connection with the shooting.  Id. at 18.  In a post-Miranda interview, he essentially confirmed what officers suspected, stating that all five individuals went to Mr. Shields's home on the night in question and carried out the shooting to retaliate against the BBUx2 Gang for the earlier shooting on the Butlers' home.  Id.

All five individuals were charged with forcible assault of a federal officer, 18 U.S.C. §§ 111(b) and 2, and use of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii).  I R. 43–44.  The defendants moved to dismiss count two, arguing that § 111(b) is not a crime of violence because there is no physical force element in § 111(b).  Id. at 48–59.  The district court denied the motion, holding that § 111(b) is a crime of violence under this court's decision in United States v. Kendall, 876 F.3d 1264 (10th Cir. 2017).  Id. at 179–88.  Mr. Barnes thereafter entered an unconditional guilty plea and proceeded to sentencing.  I Supp. R. 4–8.

The Presentence Investigation Report ("PSR") calculated a guideline range of 18 to 24 months' imprisonment for count one and a statutory minimum of 120 months' imprisonment for count two, to be imposed consecutively.  II R. 30–31.  It also stated that an upward departure may be warranted for count one because the applicable guideline for aggravated assault, U.S.S.G. § 2A2.2, contemplates one victim whereas there were multiple victims here.  Id. at 35.  The upward departure

3

would yield a higher guideline range of 33 to 41 months' imprisonment for count one.  Id.

The government objected to the PSR, arguing that an additional ground for departure was the injury to the civilian-victim, J.B., because "the Guidelines for assault on a federal officer do not adequately account for an injury to secondary victim(s)."  Id. at 37.  Mr. Barnes opposed, stating that the scope of § 2A2.2 sweeps more broadly and contemplates civilian injuries.  Id. at 38.  The government's sentencing memo argued for a ten-level upward departure for count one: five levels to account for the presence of multiple victims, and five levels to account for the injury to the civilian-victim.  I R. 354–57.  The government recommended 171 months' imprisonment followed by 5 years' supervised release.  Id. at 357.  Mr. Barnes requested a downward variance to account for his young age, difficult childhood, and lack of criminal history as an adult.  Id. at 335.  Mr. Barnes suggested 130 months' imprisonment.  Id. at 337.  Before sentencing, the district court filed a notice of possible departure and/or variance, stating that the court was "considering an upward departure on the bases outlined in the Government's submissions, and/or a variance under the § 3553(a) factors."  Id. at 376.

We pause briefly to note the difference between departures and variances.  Departures are "non-Guidelines sentences imposed under the framework set out in the Guidelines."  United States v. Vazquez-Garcia, 130 F.4th 891, 899 (10th Cir. 2025) (quotations omitted).  Variances, on the other hand, are "non-Guidelines sentence[s] arising from a district court's case-specific analysis of the sentencing

4

factors in § 3553(a)." Id.  For departures, courts consider "whether a particular offense falls within the heartland of offenses involving similar defendants convicted of the same conduct[.]" Id. (quotations omitted).  For variances, "a district court has independent discretion to vary based on the § 3553(a) factors even when an offense falls in the heartland of similar offenses." Id. (quotations omitted).

At sentencing, the district court sustained the government's objection for an upward variance because the court believed that "what happened here is outside the heartland of cases" that the offense was designed to address.  III R. 50–51.  According to the district court, the heartland of those cases involve "one-on-one" or "one-on-two" encounters with law enforcement. Id. at 51.  The heartland does not include cases like this one where multiple individuals fire several rounds injuring law enforcement and civilians and subjecting the surrounding neighborhood to an "indiscriminate hail of gunfire[.] Id. at 51–52.  Thus, the court concluded that a departure was warranted because the guidelines did not account for the severity of the underlying conduct. Id. at 52.

Even absent the upward departure, the district court further stated that it would vary upward. Id. at 53.  The court assessed the § 3553(a) sentencing factors. Id. Regarding the nature and circumstances of the offense, the court reiterated the seriousness of the retaliatory shooting which included "indiscriminate shooting at night" and terrorized officers and the neighborhood. Id. at 53–54.  The court also highlighted the need to promote respect where, as here, a retaliatory shooting indicates that the defendants lack respect for the law. Id. at 54.  Regarding the

5

history and characteristics of the defendant, the court noted that Mr. Barnes "willingly signed on to be a part of and engage in retaliation[.]" Id. With respect to protecting the public, the court emphasized that "incarceration and incapacitation is critically important" to promote public safety where, as here, the defendants are willing to engage in indiscriminate shooting in a neighborhood of families, children, and elderly people. Id. at 55. Thus, the court concluded that the § 3553(a) factors also warranted an upward variance and noted that the sentencing outcome would be the same under both the upward departure and the upward variance. Id. Mr. Barnes was sentenced to 156 months' imprisonment, consisting of 36 months for count one and 120 months for count two to run consecutively. I R. 380. The court also set a term of 5 years' supervised release following Mr. Barnes's term of imprisonment. Id. at 381. Mr. Barnes appealed. Id. at 387.

## Discussion

On appeal, Mr. Barnes argues that his § 924(c) conviction must be vacated because assault on a federal officer under § 111(b) is not a crime of violence. Aplt. Br. at 9. He also challenges the reasonableness of his sentence, arguing that the district court erred by imposing an upward departure because this case is within the heartland of the offense guideline. Id. at 26. We reject Mr. Barnes's arguments.

### I.    Mr. Barnes's Guilty Plea Waives His Challenge to His § 924(c) Conviction.

Mr. Barnes first asserts that we must vacate his § 924(c) conviction because § 111(b) is not a crime of violence. Id. at 9. Typically, "[w]e review de novo whether an offense qualifies as a crime of violence." United States v. Kepler, 74

6

F.4th 1292, 1300 (10th Cir. 2023). Recall, however, that Mr. Barnes entered an unconditional guilty plea. I Supp. R. 4–8. It is well-established that "a voluntary and unconditional guilty plea waives all non-jurisdictional defenses." United States v. De Vaughn, 694 F.3d 1141, 1145 (10th Cir. 2012) (quotations omitted). There are a few narrow exceptions for constitutional claims including "due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment." Id. at 1145–46. An unconditional guilty plea also does not waive challenges asserting that the statute of conviction is unconstitutional. United States v. Class, 583 U.S. 174, 181–83 (2018). Mr. Barnes's challenge does not fall into any of these categories. Rather, he challenges his § 924(c) conviction by arguing that "the course of conduct confessed to in the plea is not in fact criminal" because § 111(b) is not a crime of violence, which he claims is a "purely legal argument" and therefore is not waived by his plea. Aplt. Reply Br. at 2–3. We are not persuaded.

To be sure, as Mr. Barnes notes, we previously recognized that a guilty plea does not waive challenges to a conviction arguing that the admitted conduct was not actually a crime. United States v. Barboa, 777 F.2d 1420, 1423 n.3 (10th Cir. 1985); see also United States v. Green, 797 F.2d 855, 856 (10th Cir. 1986) (relying on Barboa); United States v. Barnhardt, 93 F.3d 706, 707–08 (10th Cir. 1996) (same). The rationale behind Barboa and its progeny was that guilty pleas do not waive such challenges because they are jurisdictional in nature insofar as they challenge "'the very power of the State to bring the defendant into court to answer the charge brought against him.'" 777 F.2d at 1423 n.3 (quoting Blackledge v. Perry, 417 U.S.

7

21, 30 (1974)).  But in United States v. Cotton, 535 U.S. 625, 630 (2002), the Supreme Court advanced a less expansive view of jurisdiction.  There, the Court suggested that jurisdiction refers to "'the courts' statutory or constitutional power to adjudicate the case.'"  Id. (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998)).  Thus, the Court concluded that indictment defects are not jurisdictional because they "do not deprive a court of its power to adjudicate a case."  Id. at 630–31.  In De Vaughn, this court acknowledged that Cotton was a "superseding contrary Supreme Court decision" which directly contradicted our holding in Green which relied on Barboa.  694 F.3d at 1149 n.4.  Therefore, Mr. Barnes's reliance on pre-De Vaughn cases is misplaced.  See Aplt. Reply Br. at 6–8.

Moreover, two of our sibling circuits have recently held that unconditional guilty pleas waive similar challenges to convictions.  Grzegorczyk v. United States, 997 F.3d 743, 745–48 (7th Cir. 2021); United States v. Pittman, 125 F.4th 527, 530–31 (4th Cir. 2025).  We agree with those circuits that such arguments present issues of statutory interpretation.  Grzegorczyk, 997 F.3d at 748; Pittman, 125 F.4th at 530.  And "an unconditional plea of guilty is sufficient to waive a defendant's right to contest the proper interpretation of the statute of conviction."  Grzegorczyk, 997 F.3d at 748.  Indeed, "the most basic function of a guilty plea" is that the defendant "necessarily admit[s] that his conduct violated the statute[.]"  Pittman, 125 F.3d at 530; see also United States v. Broce, 488 U.S. 563, 570 (1989) ("A guilty plea is more than a confession which admits that the accused did various acts . . . [i]t is an admission that he committed the crime charged against him." (citations and

8

quotations omitted)).  And "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'"  Class, 583 U.S. at 183 (quoting Broce, 488 U.S. at 573–74).

Mr. Barnes's argument that the offense to which he pled — assault on a federal officer under § 111(b) — is not actually a crime of violence under § 924(c) is a statutory interpretation argument which Mr. Barnes waived by entering an unconditional guilty plea.  See Grzegorczyk, 997 F.3d at 745–48.  Such challenges do not fit within the narrow category of claims which are not waived by a guilty plea.  See De Vaughn, 694 F.3d at 1145–46.  Adopting Mr. Barnes's argument — that § 111(b) is not a crime of violence  — "would contradict the 'admissions necessarily made'" in his plea.  Class, 583 U.S. at 183 (quoting Broce, 488 U.S. at 573–74).  Mr. Barnes suggests that this creates a "waiver by plea rule" whereby defendants must go to trial to preserve such challenges.  Aplt. Reply Br. at 2–3.  Not so.  Defendants can enter conditional pleas, thereby "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."  Fed. R. Crim. P. 11(a)(2).  Mr. Barnes pled unconditionally and, in doing so, waived the challenge which he now makes to his § 924(c) conviction.  We therefore affirm that conviction.

## II.    Mr. Barnes's Sentence is Reasonable.

Next, Mr. Barnes appeals from the district court's decision to depart and vary upward to impose a sentence 12 months above the guideline range.  Aplt. Br. at 26–31.  Specifically, he argues that the upward departure was erroneous because the offense conduct was not outside of U.S.S.G. § 2A2.2's heartland.  Id. at 26.  He

further argues that the district court's separate decision to vary upward does not render that error harmless.  Id. at 30.  We disagree.

We first note that "[d]epartures and variances are analytically distinct, and courts must be careful not to confuse them."  Vazquez-Garcia, 130 F.4th at 899 (quotations omitted).  Still, this court has acknowledged that district courts may "issue both a variance and a departure," and need not "choose one over the other[.]"  United States v. Fykes, 678 F. App'x 677, 688 (10th Cir. 2017).  Indeed, a district court "does not necessarily need to discuss each one separately."  Id.; see also United States v. Martinez-Barragan, 545 F.3d 894, 901 (10th Cir. 2008) ("[A] sentencing judge does not commit reversible error by consolidating the two discussions.").  As explained below, the district court did not abuse its discretion by varying upward.  Thus, we need not consider whether the upward departure was separately warranted.  Even if some of the district court's statements regarding the departure were erroneous, such an error would be harmless because there is "no reason to think that the district court would impose a different sentence on remand if we were to reverse the departure while affirming the variance[.]"  United States v. DeRusse, 859 F.3d 1232, 1238 (10th Cir. 2017) (quotations omitted).  In fact, the district court explicitly stated that it would impose the same sentence by way of an upward variance, even if it did not also depart upward.  III R. 55.

We review sentences for reasonableness, which has both procedural and substantive components.  Martinez-Barragan, 545 F.3d at 898.  "Review for substantive reasonableness focuses on whether the length of the sentence is

10

reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Sample, 901 F.3d 1196, 1199 (10th Cir. 2018) (quotations omitted). We construe Mr. Barnes's challenge as a substantive reasonableness challenge, given that he claims that a thirteen-year sentence is unreasonable in light of the § 3553(a) factors. Aplt. Br. at 30–31; Aplee. Br. at 42.

Our review is for abuse of discretion. Martinez-Barragan, 545 F.3d at 905. A district court abuses its discretion if the sentence imposed is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Gross, 44 F.4th 1298, 1302 (10th Cir. 2022) (quotations omitted). The sentence must "exceed[] the bounds of permissible choice" to be unreasonable. Id. (quotations omitted). In making this determination, "we give due deference to the sentencing court's variance based on 18 U.S.C. § 3553(a)'s factors." Id. (quotations omitted). Indeed, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." Gall v. United States, 552 U.S. 38, 51 (2007) (quotations omitted). This court has declined to find an abuse of discretion where the district court "carefully considers" the § 3553(a) factors and conducts "a detailed, individualized assessment" of how those factors apply in a specific case. United States v. McCulley, 679 F. App'x 643, 645 (10th Cir. 2017). "We will not reweigh the factors on appeal[.]" Id. Comparatively, we have found abuse of discretion where the district court relies "solely on one § 3553(a) factor" in varying upward and does not "address[] other relevant factors." United States v. Crosby, 119 F.4th 1239, 1247 (10th Cir. 2024).

Here, in varying upward, the district court conducted "a detailed, individualized assessment" of the relevant § 3553(a) factors.  See McCulley, 679 F. App'x at 645; III R. 53–55.  The court carefully explained that an upward variance was warranted based on the severity of the offense conduct, the danger that the shooting posed to the neighborhood, the "indiscriminate" manner in which the shooting occurred, the need to promote respect or the law, Mr. Barnes's willingness to engage in gang-related violence, deterrence for those like Mr. Barnes who "willingly sign[] on to be a part of this," and the need for "incarceration and incapacitation" to protect the public.  III R. 53–55.  We do not second-guess the district court's assessment of the § 3553(a) factors.  Rather, we defer to the district court's decision to vary upward based on those factors.  Gross, 44 F.4th at 1301.  We therefore are not persuaded that Mr. Barnes's above-guideline sentence "exceed[s] the bounds of permissible choice" in this case.  Id. at 1302 (quotations omitted).

We need not separately assess whether a departure was warranted because we do not think that Mr. Barnes's sentence would be any different if we reversed the departure while affirming the variance.  DeRusse, 859 F.3d at 1238.  In any event, although the district court was incorrect to suggest that § 2A2.2 only applies to federal officers rather than all aggravated assaults, our decision in United States v. Pettigrew, 468 F.3d 626 (10th Cir. 2006), convinces us that the district court was not incorrect in ultimately concluding that this case falls outside the heartland of typical cases covered by § 2A2.2.  III R. 50–53.  In Pettigrew, this court acknowledged that an upward departure under § 2A2.2 may be warranted where the assault involves

12

multiple victims and was carried out "in an excessively reckless manner with regard to others." 468 F.3d at 640. As the district court explained, that is what happened here. III R. 50–53.

AFFIRMED.