FILED
United States Court of Appeals
Tenth Circuit

December 12, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TOMMY LOUIS TAYLOR, a/k/a
Tommy Lewis Taylor, a/k/a Tommy
Taylor, Jr.,

      Defendant - Appellant.

No. 16-7028

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:14-CR-00042-RAW-1)**

---

Barry L. Derryberry, Research & Writing Specialist (Julia L. O'Connell, Federal
Public Defender, and Scott A Graham, Assistant Federal Public Defender, with
him on the brief), Office of the Federal Public Defender, Tulsa, Oklahoma, for
Defendant-Appellant.

Linda A. Epperly, Assistant United States Attorney (Mark F. Green, United States
Attorney, and Edward Snow, Assistant United States Attorney, with her on the
brief), Office of the United States Attorney, Muskogee, Oklahoma, for Plaintiff-
Appellee.

---

Before **BRISCOE, EBEL** and **MURPHY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant Tommy Taylor was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (2), and was sentenced to 110 months' imprisonment. On direct appeal, this court remanded for resentencing because Taylor's sentence was based in part on the application of the residual clause of U.S.S.G. § 4B1.2(a)(2), which has been held to be unconstitutionally vague. On remand, the district court sentenced Taylor to a term of imprisonment of 87 months. Taylor again appeals, arguing that the district court incorrectly calculated his base and total offense levels by improperly treating a prior state conviction as a "crime of violence" pursuant to U.S.S.G. §§ 4B1.2(a)(1) and 2K2.1(a)(4)(A). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject Taylor's arguments and affirm his sentence.

I

In August 2014, Taylor was convicted by a jury of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (2). The district court sentenced Taylor to a term of imprisonment of 110 months, to be followed by a three-year term of supervised release. In doing so, the district court concluded that Taylor "ha[d] two prior [Oklahoma state] felony convictions," one for assault and battery with a dangerous weapon and the other for failure to stop at a roadblock, that qualified as "crimes of violence" under U.S.S.G. § 4B1.2(a) and that warranted an enhanced base offense level under U.S.S.G. § 2K2.1(a)(2). ROA, Vol. 3 at 5.

2

Taylor filed a direct appeal challenging the district court's treatment of his prior conviction for failure to stop at a roadblock as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2)'s residual clause. While Taylor's direct appeal was pending, we held § 4B1.2(a)(2)'s residual clause to be unconstitutionally vague in light of the Supreme Court's decision in Johnson v. United States, — U.S. —, 135 S. Ct. 2551 (2015) (holding that the definition of "violent felony" contained in the Armed Career Criminal Act's residual clause was unconstitutionally vague). United States v. Madrid, 805 F.3d 1204, 1210 (10th Cir. 2015). When we considered Taylor's appeal, we applied that holding to his case, see Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (holding "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final"), and remanded to the district court with directions to vacate Taylor's sentence and resentence him. United States v. Taylor, 630 F. App'x 879, 881 (10th Cir. 2015) (Taylor I).

On remand, a revised presentence investigation report (PSR) was prepared and submitted to the district court and parties. The revised PSR set forth a base offense level of 20 pursuant to U.S.S.G. § 2K2.1, noting that Taylor "ha[d] one prior felony conviction for a crime of violence . . . : Assault and Battery with a Dangerous Weapon in Muskogee County District Court." ROA, Vol. 3 at 109 (revised PSR at 3). The revised PSR concluded that no other adjustments were necessary to the base offense level, and consequently arrived at a total offense

3

level of 20.  When combined with a criminal history score of 17 and a criminal history category of VI, Taylor's advisory Guidelines sentencing range was 70 to 87 months.  Id. at 117 (revised PSR at 11).

Neither party objected to the revised PSR, and the district court adopted the sentencing calculations contained therein.  ROA, Vol. 4 at 12.  The district court in turn resentenced Taylor to a term of imprisonment of 87 months, to be followed by a three-year term of supervised release.  Id. at 14.

Following the entry of final judgment, Taylor filed a timely notice of appeal.

## II

On appeal, Taylor argues that the district court erred in treating his prior Oklahoma state conviction for assault and battery with a dangerous weapon as a "crime of violence" under U.S.S.G. §4B1.2(a)(1) and imposing "an elevated base offense level pursuant to [U.S.S.G.] § 2K2.1(a)(4)(A)."  Aplt. Br. at 8.

## A

Generally speaking, we review for abuse of discretion a defendant's challenges to the procedural reasonableness of his sentence.  Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Worku, 800 F.3d 1195, 1201 (10th Cir. 2015).  If, however, the issue is raised for the first time on appeal, we review it only for plain error.  United States v. McComb, 519 F.3d 1049, 1054 (10th Cir. 2007).

4

Taylor argues that the abuse of discretion standard should apply in this appeal because he objected to the original PSR—the one that was issued prior to his original sentencing—"on the ground that his prior [state] conviction for assault and battery with a dangerous weapon was not a qualifying predicate conviction." Aplt. Br. at 8. Although Taylor concedes that he did not object to the revised PSR that was prepared on remand, he argues that "[a] second objection was not necessary to preserve the issue for review." Id. According to Taylor, the district court was aware of his position given his objection to the original PSR and further objection would have been futile.

We reject Taylor's arguments on this point. As noted, the original PSR treated two of Taylor's prior state convictions as "crimes of violence" under U.S.S.G. § 4B1.2 and, consequently, imposed a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2). ROA, Vol. 3 at 5. Taylor filed a one-page objection to the original PSR stating he was "not convinced that the convictions that [we]re alleged to be crimes of violence . . . me[t] the definitions of USSG Section 4 B1.2 [sic] or by way of the categorical or modified categorical approach." Id. at 15. The district court, however, overruled this objection at the time of sentencing. ROA, Vol. 2 at 14. We concluded on appeal that one of Taylor's prior state convictions—for failure to stop at a roadblock—should not have been treated as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2)'s residual clause. Taylor I, 630 F. App'x at 879. On remand, the revised PSR treated only Taylor's remaining

5

state conviction—for assault and battery with a dangerous weapon—as a "crime of violence" and, in turn, imposed a base offense level of 20. Taylor filed no written objection to the revised PSR. And, at the resentencing hearing, Taylor's counsel expressly stated on the record that he had no objections to the revised PSR. ROA, Vol. 4 at 12. Consequently, Taylor failed to alert the district court to the error that he now complains of on appeal. For this reason, we conclude that we are bound to apply the plain error standard to this appeal.

In reviewing for plain error, we have "discretion to remedy a forfeited error provided certain conditions are met." Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016). The defendant must establish (1) the existence of "an error that has not been intentionally relinquished or abandoned," (2) "the error must be plain—that is to say, clear or obvious," and (3) "the error . . . have affected the defendant's substantial rights." Id. "Once these three conditions have been met," we must "exercise [our] discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted).

B

Section 4B1.2(a)(1) of the United States Sentencing Guidelines, sometimes referred to as the "elements clause" of § 4B1.2(a), provides as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

6

> (1) has as an element the use, attempted use, or threatened use
> of physical force against the person of another . . . .

U.S.S.G. § 4B1.2(a)(1).  To determine whether a prior conviction fits within the elements clause, "we use one of two methods of analysis: the categorical or modified categorical approach."  Madrid, 805 F.3d at 1207.  The categorical approach focuses solely on "the elements of the statute forming the basis of the defendant's conviction."  Descamps v. United States, — U.S. —, 133 S. Ct. 2276, 2281 (2013).  "[T]he modified categorical approach applies when the statute is 'divisible'; that is, when it 'lists multiple, alternative elements, and so effectively creates several different crimes.'"  Madrid, 805 F.3d at 1207 (quoting Descamps, 133 S. Ct. at 2285).  "[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."  Descamps, 133 S. Ct. at 2281.

It is undisputed that Taylor was previously convicted in Oklahoma state court of assault and battery with a dangerous weapon, in violation of Okla. Stat. tit. 21, § 645.  See ROA, Vol. 3 at 5.  At the time of Taylor's conviction, that statute provided as follows:

> Every person who, with intent to do bodily harm and without
> justifiable or excusable cause, commits any assault, battery, or
> assault and battery upon the person of another with any sharp or
> dangerous weapon, or who, without such cause, shoots at another,
> with any kind of firearm or air gun or other means whatever, with
> intent to injure any person, although without the intent to kill such

7

person or to commit any felony, upon conviction is guilty of a felony punishable by imprisonment in the penitentiary not exceeding ten (10) years, or by imprisonment in a county jail not exceeding one (1) year.

Okla. Stat. tit. 21, § 645 (1991).

The revised PSR, which was adopted by the district court at resentencing without objection by either party, treated Taylor's prior Oklahoma state conviction for assault and battery with a dangerous weapon as a "crime of violence" pursuant to U.S.S.G. § 4B1.2(a). ROA, Vol. 3 at 109. In doing so, the revised PSR did not expressly cite to § 4B1.2(a)(1)'s elements clause. Nor did the district court at resentencing specify that it was relying on the elements clause. Because, however, the elements clause was the only logical basis for treating the conviction as a "crime of violence," we presume, as does Taylor, that this was the basis for the district court's conclusion.[1]

C

Taylor's appellate challenge to the district court's treatment of his prior conviction as a "crime of violence" hinges in large part on the Supreme Court's recent decision in Mathis v. United States, — U.S. —, 136 S. Ct. 2243 (2016). The petitioner in that case, Richard Mathis, "pleaded guilty to being a felon in possession of a firearm" in violation of 18 U.S.C. § 922(g). 136 S. Ct. at 2250.

---

[1] Taylor's prior conviction was not for one of the offenses specifically enumerated in U.S.S.G. § 4B1.2(a)(2). Further, in light of our decision in Taylor I, the district court was effectively prohibited from treating Taylor's prior conviction under § 4B1.2(a)(2)'s residual clause.

8

"At sentencing, the Government asked the District Court to impose [the Armed Career Criminal Act's (ACCA's)] 15-year minimum penalty based on Mathis's five prior convictions for burglary under Iowa law." Id. Notably, "Iowa's burglary statute . . . covers more conduct than generic burglary," and can be violated by unlawful entry not only into a structure, but also into a "'land, water, or air vehicle.'" Id. (quoting Iowa Code § 702.12 (2013)). In other words, Iowa's burglary statute "defines one crime, with one set of elements, broader than generic burglary—while specifying multiple means of fulfilling its locational element, some but not all of which (*i.e.*, buildings and other structures, but not vehicles) satisfy the generic definition." Id. The district court in Mathis's case "imposed an ACCA enhancement on Mathis after inspecting the records of his prior convictions and determining that he had burgled structures, rather than vehicles." Id. The Eighth Circuit affirmed, Mathis filed a petition for writ of certiorari, and the Supreme Court granted the petition and reversed.

In doing so, the Court began by reiterating that in determining "whether a prior conviction is for generic burglary (or other listed crime [in the ACCA]) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." Id. at 2248. "Some statutes," the Court noted, "have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." Id. at 2249. In

9

particular, the Court noted, the Iowa statute at issue before it "enumerate[d] various factual means of committing a single element." Id. More specifically, Iowa's burglary statute "itemize[d] the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score." Id.

The Court in turn noted that the precise issue before it was "whether ACCA treats this kind of statute as it does all others, imposing a sentence enhancement only if the state crime's elements correspond to those of a generic offense—or instead whether the Act makes an exception for such a law, so that a sentence can be enhanced when only one of the statute's specified means creates a match with the generic offense, even though the broader element would not." Id. at 2250. The Court held "that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." Id. at 2251. "How a given defendant actually perpetrated the crime," the Court explained, "makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." Id. The fact that the statute of conviction "specifies alternative possible means of commission," the Court held, "gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition." Id. And, the Court emphasized, the only use of the modified categorical approach it has ever allowed "is to determine 'which *element[s]*

10

played a part in the defendant's conviction.'" Id. at 2253 (quoting Descamps v. United States, 570 U.S. at —, 133 S. Ct. 2276, 2283, 2285 (2013) (emphasis added)). "In other words," the Court stated, "the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." Id. "It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." Id.

As for Mathis, the Supreme Court noted that "the elements of [his] crime of conviction (Iowa burglary) cover[ed] a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary)." Id. at 2251. "[T]hat undisputed disparity," the Court held, "resolve[d] the case" in Mathis's favor. Id.

D

Taylor argues that the principles outlined in Mathis should have prevented the district court from considering the "dangerous weapon" element of his Oklahoma conviction for assault and battery with a dangerous weapon, and in turn from treating that conviction as a "crime of violence" under the elements clause set forth in § 4B1.2(a)(1). In support of this proposition, Taylor begins by noting that "the element of 'dangerous weapon' is not defined by the [Oklahoma] statute that establishes the crime of assault and battery with a dangerous weapon." Aplt.

11

Br. at 7. Taylor in turn notes that Oklahoma "[s]tate case law provides alternative definitions of dangerous weapon, including weapons that are dangerous per se, and anything that is dangerous due to the manner in which it is used." Id. Taylor asserts that, under the principles outlined in Mathis, these alternative definitions of dangerous weapon constitute "means, not elements." Id. The result, Taylor asserts, is that Mathis "prevents consideration" at all of the statute's dangerous weapon element. Id. And, Taylor argues, "[o]nce that element is set aside, it is apparent that [a] conviction [under the statute] cannot be classified as a violent felony, because the remaining elements of assault and battery can be satisfied by mere unconsented touching under Oklahoma law." Id.

We addressed a nearly identical issue, and one involving the same Oklahoma criminal statute, in our recent unpublished opinion in United States v. Mitchell, — F. App'x —, 2016 WL 3569764 (10th Cir. June 29, 2016). The only difference of significance is that Mitchell did not address the impact, if any, of the Supreme Court's decision in Mathis. As explained in greater detail below, we reaffirm the outcome reached in Mitchell and conclude that, contrary to Taylor's arguments, Mathis does not require a different result.

As we noted in Mitchell, the threshold question is whether the Oklahoma statute under which Taylor was convicted, Okla. Stat. tit. 21, § 645, contains a single, indivisible set of elements or instead lists multiple, alternative elements. In Mitchell, we held that § 645 "has a divisible set of elements; it criminalizes an

12

'assault, battery, or assault and battery' with a sharp or dangerous weapon, and in the alternative it criminalizes 'shoot[ing] at another' with a gun or similar means." 2016 WL 3569764 at *4. We also held in Mitchell that "[t]he former alternative further contains the sub-alternatives of 'assault, battery, *or* assault and battery,' and 'sharp *or* dangerous weapon.'" Id. (quoting § 645). The result is that "we must therefore apply the modified categorical approach, examining the charging document to determine what set of elements was applied to [Taylor]." Id.

Taylor's prior Oklahoma state conviction for violating § 645 arose out of an information filed in the District Court of Muskogee County that alleged, in pertinent part:

> COUNT TWO: [on the 22nd day of December, 1998, Taylor] unlawfully, willfully, wrongfully, intentionally and feloniously without justifiable or excusable cause commit[ted] an assault and battery on one Terry Wayne West with a certain dangerous weapon, to-wit: a pool stick, held in the hand of said defendant and with which he struck, clubbed and beat the said Terry Wayne West with force and violence, with the unlawful and felonious intent then and there to do him bodily harm . . . .

ROA, Vol. 3 at 71. This charging document makes clear that Taylor was charged under the first alternative part of § 645 ("assault, battery, or assault and battery" with a sharp or dangerous weapon), and under the sub-alternatives of "assault," "battery" and "dangerous weapon." "The offense could thus be reduced to: assault [and battery] upon the person of another with any dangerous weapon with

13

intent to do bodily harm and without justifiable or excusable cause." Mitchell, 2016 WL 3569764 at *4. Oklahoma law defines an "assault" as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another," Okla. Stat. tit. 21, § 641, and a "battery" as "any willful and unlawful use of force or violence upon the person of another," Okla. Stat. tit. 21, § 642. Further, as Taylor correctly notes, the Oklahoma Court of Criminal Appeals has held that the amount of force necessary to constitute a simple assault or simple battery under Oklahoma law is "only the slightest force or touching." Steele v. State, 778 P.2d 929, 931 (Okla. Crim. App. 1989).

Armed with this information, "our task is to determine whether the above elements include 'the use, attempted use, or threatened use of physical force against the person of another.'" Mitchell, 2016 WL 3569764 at *5 (quoting § 4B1.2(a)(1)). As Taylor notes, "[t]he Supreme Court [has] clarified that the amount of force required to satisfy the elements clause is '*violent* force—that is, force capable of causing physical pain or injury to another person.'" Id. (quoting Johnson, 559 U.S. at 140). "And we have held that simple battery under Oklahoma law does not satisfy the elements clause because it may be accomplished by a slight touch." Id. (citing United States v. Smith, 652 F.3d 1244, 1247 (10th Cir. 2011)). "Therefore, we must determine whether § 645 satisfies the requisite violent force necessary because it contains the additional element of 'a dangerous weapon.'" Id.

14

We have previously held, interpreting a similar New Mexico statute, "that apprehension-causing assault with a deadly weapon does include as an element the threatened use of force." Id. (citing United States v. Ramon Silva, 608 F.3d 663, 670 (10th Cir. 2010)). "The New Mexico statute in Ramon Silva involved a . . .definition of deadly weapon" that is "very similar" to "the 'dangerous weapon' definition [at issue] here." Id. (citing 608 F.3d at 670 and N.M. Stat. Ann. § 30-1-12(B)). We concluded in Ramon Silva that "[t]hreatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of '*violent* force' because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future." 608 F.3d at 670 (emphasis added). "Additionally," we concluded, "'apprehension causing' aggravated assault threatens the use of '*violent* force' because the proscribed conduct always has the potential to lead to '*violent* force.'" Id. at 671-72 (emphasis added). "Therefore, following Ramon-Silva, when a statute criminalizes 'purposefully threatening . . . a victim[] with a weapon capable of causing death or great bodily harm,' a conviction under that statute is a crime of violence." Mitchell, 2016 WL 3569764 at *5 (quoting Ramon Silva, 608 F.3d at 672).

In light of this precedent, we concluded in Mitchell "that the additional element of a deadly or dangerous weapon makes an apprehension-causing assault a crime of violence, even if the simple assault would not be." Id. "And," we

15

further concluded, "if an apprehension-causing assault with a deadly or dangerous weapon constitutes a sufficient threat of force to satisfy the elements clause, then an attempted-battery assault with such a weapon does as well; an attempted-battery assault contains as an element the *attempted* use of force, not only the threatened use of force." Id. "With the addition of a deadly or dangerous weapon, therefore, an attempted-battery assault is a crime of violence under the elements clause as well." Id.

Finally, applying these principles to the first alternative part of § 645, we concluded as follows in Mitchell:

> The statute here criminalizes an intentional attempt or threat to commit violence on another—that is, either an attempted-battery assault or an apprehension-causing assault—with a weapon capable of causing great bodily harm. In other words, a conviction under this portion of § 645 categorically requires proof of the attempted use or threatened use of violent force. Following our precedent, a conviction under these elements of § 645 "is categorically a crime of violence under all circumstances." Madrid, 805 F.3d at 1207.

Id. at *6.

The only possible distinction between Mitchell and the case at issue is Taylor's argument that Mathis effectively nullifies the dangerous weapon element of his crime. As Taylor correctly notes, § 645 includes as an element the use of a dangerous weapon, but does not expressly define the meaning of "dangerous weapon." As a result, the Oklahoma courts have, over several decades, effectively fleshed out the definition of "dangerous weapon" to include, among

16

other things, "a pistol, revolver, dagger, or implement likely to cause death or bodily harm." Mitchell, 2016 WL 3569764 at *4 (citing OUJI-CR 4-28). Thus, it is clear that § 645's "dangerous weapon" element can be satisfied by "multiple means." Mathis, 136 S. Ct. at 2250. Because the specific type of "dangerous weapon" that a particular defendant uses is, in essence, a "disjunctive factual scenario[] rather than [a] separate element[], . . . a jury need not make any specific findings" regarding the type of weapon used. Id. at 2249.

Importantly, however, these features do not, as suggested by Taylor, operate to nullify the "dangerous weapon" element for purposes of determining whether a conviction under the first alternative part of § 645 qualifies as a "crime of violence" for purposes of § 4B1.2(a)(1). That is because, regardless of how the "dangerous weapon" element is satisfied in a particular case, the "dangerous weapon" element always operates in the manner described in Mitchell and Ramon Silva. More specifically, regardless of the type of "dangerous weapon" that is employed by a particular defendant, the use of a "dangerous weapon" during an assault or battery always "constitutes a sufficient threat of force to satisfy the elements clause" of § 4B1.2(a)(1). Mitchell, 2016 WL 3569764 at *5.

For these reasons, we conclude that Taylor has failed to establish error on the part of the district court in calculating his sentence, let alone plain error.

III

The judgment of the district court is AFFIRMED.

17