FILED
United States Court of Appeals
Tenth Circuit

July 20, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES,

    Plaintiff - Appellee,

v.

BRIAR CLAYTON EUGENE
ADAMS,

    Defendant - Appellant.

No. 21-3043

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:20-CR-40015-TC-1)**

_____

Melody Brannon, Kansas Federal Public Defender (Daniel T. Hansmeier, Appellate Chief, with her on the briefs), Kansas City, Kansas, for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney, District of Kansas (Duston J. Slinkard, Acting United States Attorney, and James A. Brown, Assistant United States Attorney, with him on the briefs), Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **BACHARACH**, **EBEL**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a challenge to a criminal sentence for

unlawfully possessing a firearm. In deciding the sentence, the district court

started with the federal sentencing guidelines. Under the guidelines, a prior conviction for a crime of violence would increase the base-offense level. U.S.S.G. § 2K2.1(a)(4).

The district court applied this guideline provision to the defendant, Mr. Briar Adams, who had a prior conviction in Kansas for aggravated battery. In considering that conviction, the court classified aggravated battery as a crime of violence and sentenced Mr. Adams to 51 months' imprisonment.[1]

Mr. Adams challenges this classification, arguing that Kansas's crime of aggravated battery includes conduct that wouldn't create a crime of violence under the sentencing guidelines. We agree. In Kansas an aggravated battery could stem from battery against a fetus, and the guidelines' definition of a *crime of violence* wouldn't cover battery against a fetus. Because the Kansas crime of aggravated battery doesn't constitute a crime of violence, we vacate the sentence and remand for resentencing.

---

[1]    With the classification of aggravated battery as a crime of violence, Mr. Adams's total offense level rose to 17. With an offense level of 17, the guideline range was 51 to 63 months' imprisonment. Without classification as a crime of violence, the offense level would have been 11, creating a guideline range of 27 to 33 months' imprisonment.

**I.      We must decide whether aggravated battery in Kansas constitutes a *crime of violence* under the applicable sentencing guideline.**

Mr. Adams was convicted of aggravated battery. Under Kansas law, aggravated battery takes place when someone "knowingly caus[es] physical contact with *another person* when done in a rude, insulting, or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Kan. Stat. Ann. § 21-5413(b)(1)(C) (emphasis added).[2] A separate definitional provision for the term *person* includes an "unborn child." Kan. Stat. Ann. § 21-5419(c). The term *unborn child* is itself defined as "a living individual organism of the species homo sapiens, in utero, at any stage of gestation from fertilization to birth." *Id.*

Given these definitional provisions, we must determine whether the statutory definition of *person* creates separate crimes for batteries against fetuses and individuals born alive. If these definitional provisions create separate crimes, we would need to decide

- which crime was reflected in Mr. Adams's judgment and

---

[2]     The Kansas judgment of conviction does not identify the applicable subsection of § 5413. In district court, the parties assumed a violation of § 21-5413(b)(1)(C). The government conditioned this assumption on Mr. Adams's waiver of any argument that the court should treat the convictions differently under (b)(1)(B) and (b)(1)(C). Section (b)(1)(B) defines aggravated battery as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Kan. Stat. Ann. § 21-5413(b)(1)(B).

- whether that crime qualified as a "crime of violence."

If the definitional provisions do not create separate crimes, we would need to decide whether every conviction under the Kansas aggravated-battery statute would necessarily qualify as a *crime of violence*.

We conclude that the definitional provisions do not create separate crimes. So we must consider whether some aggravated batteries would fall outside the guidelines' definition of a *crime of violence*. We answer *yes*. The guidelines define a *crime of violence* as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the *person* of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added). Under this guideline definition, we conclude that the term *person* refers only to individuals born alive; fetuses aren't included. So some aggravated batteries in Kansas would fall outside the federal sentencing guidelines' definition of a *crime of violence*.

## II. We compare the guidelines' definition of a *crime of violence* to the elements of Mr. Adams's crime.

To determine whether the state conviction matches the federal sentencing guidelines' definition of a *crime of violence*, we apply the categorical approach. *United States v. Taylor*, 843 F.3d 1215, 1220 (10th Cir. 2016). Under this approach, the court identifies the elements of the statute of conviction. *Mathis v. United States*, 579 U.S. 500, 136 S. Ct.

4

2243, 2248 (2016); *United States v. Kendall*, 876 F.3d 1264, 1268 (10th Cir. 2017). The court then "compare[s] the scope of conduct covered by the elements of the crime . . . with § 4B1.2(a)'s definition of 'crime of violence.'" *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017). "If some conduct that would be a crime under the statute would not be a 'crime of violence' under § 4B1.2(a), then any conviction under that statute will not qualify as a 'crime of violence' for a sentence enhancement under the Guidelines, regardless of whether the conduct that led to a defendant's prior conviction was in fact violent." *Id*.

### III.  Kansas's statute on aggravated battery creates only a single crime that can be committed against either a fetus or an individual born alive.

To apply the categorical approach, we must determine the scope of the applicable state statute. On appeal, the government argues that Kansas's aggravated-battery statute (§ 21-5413) and the definitional provision (§ 21-5419) create two separate crimes: (1) § 21-5413 criminalizes battery of individuals born alive, and (2) § 21-5419 criminalizes battery of fetuses. We reject this argument, concluding that the aggravated-battery statute creates only a single crime.

#### A.    The government has justified consideration of its new argument as to the existence of two separate crimes.

The government didn't make this argument in district court. But we have discretion to consider this argument as a basis to affirm. *Elkins v.*

*Comfort,* 392 F.3d 1159, 1162 (10th Cir. 2004). In deciding how to exercise this discretion, we consider

1.    "whether the [argument] was fully briefed and argued here and below,"

2.    "whether the parties have had a fair opportunity to develop the factual record," and

3.    "whether, in light of factual findings to which we defer or uncontested facts, [the court's] decision would involve only questions of law."

*Id*. The first factor weighs against consideration of the government's new argument as a basis to affirm, but the second and third factors support consideration.

The first factor weighs against consideration because the government did not brief the issue in district court. *See United States v. Black*, 25 F.4th 766, 777 (10th Cir. 2022) (stating that the first factor weighs against consideration when the argument was fully briefed on appeal but hadn't been briefed in district court); *Brown v. Perez*, 835 F.3d 1223, 1236 (10th Cir. 2016) ("Because the [appellees] did not raise this argument before the district court, the first factor weighs against reaching it on appeal.").

But the second and third factors support consideration. When the appellate argument involves a pure issue of law, this factor would support consideration. *See* p. 6, above. But if the Kansas statute created two separate crimes, we'd need to decide which crime Mr. Adams had committed. That inquiry would ordinarily involve either a question of fact

6

or a mixed question of law and fact. *Lucio-Rayos v. Sessions*, 875 F.3d 573, 583 (10th Cir. 2017); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 765 (2021) ("Really, this Court has never doubted that the who, what, when, and where of a conviction . . . pose questions of fact.").

But here, Mr. Adams hasn't suggested a factual dispute over the nature of his conviction. In its response brief, the government had argued that Mr. Adams's conviction involved battery against his girlfriend rather than a fetus. Mr. Adams responded that he didn't need to address the government's characterization of his conviction. That's true because he contended only that aggravated battery constitutes a single crime that covers harm to a fetus or an individual born alive.

Though Mr. Adams had a chance to address the government's characterization of his conviction, he didn't need to. He could instead do what he did, focusing on the characterization of the crime itself. And that characterization creates a legal issue. *See, e.g.*, *United States v. Lerma*, 877 F.3d 628, 632 (5th Cir. 2017) (stating that "the district court's divisibility determination would generally represent a question of law"). Given the legal nature of that issue, we see no deficiency in the record on the government's characterization of Mr. Adams's conviction. So the second and third factors support consideration of the government's new argument.

7

Because two of the three factors support consideration, we exercise our discretion to consider the government's new argument for affirmance.

**B.    We reject the government's argument on the merits.**

Though we consider the government's new argument, we reject it because aggravated battery in Kansas constitutes a single crime that can be committed against either a fetus or individual born alive.

The parties agree that the Kansas law criminalizes batteries against both fetuses and individuals born alive. But are batteries against individuals and fetuses two separate crimes or just different means of committing the same crime? The answer to this question turns on the distinction between elements and means. *United States v. Cantu*, 964 F.3d 924, 927–28 (10th Cir. 2020). Elements are what the prosecution must prove to obtain a conviction; means are just ways that someone can commit a crime. *Mathis v. United States*, 579 U.S. 500, 136 S. Ct. 2243, 2248 (2016).

To determine whether statutory terms are elements or means, we start by considering the state statute and state caselaw. If they definitively show that the terms are elements or means, the inquiry ends. *Id.*, 136 S. Ct. at 2256. If the status remains uncertain, we can peek at the state-court record to determine whether the statutory term involves an element or means. *Id.* at 2256–57. If we were to remain uncertain, we would consider the

statutory term a means (creating only a single crime) rather than an element. *United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018).

### 1. The definitional provision creates means rather than elements.

We need not look beyond the statutory definition of *battery*. This definition contains everything that the prosecution must prove:

- knowing or reckless conduct and

- causation of physical contact with *another person* in a manner that's rude, insulting, or angry.

Kan. Stat. Ann. § 21-5413(a). The term *person* is elsewhere defined to include an unborn child. *See* Kan. Stat. Ann. § 21-5419(c). Given that definition, the government argues that the statutory definition of *person* splits battery into two separate crimes. But definitional provisions don't ordinarily create separate elements.

The Kansas Supreme Court considered the impact of a definitional provision in *State v. Castleberry*, 339 P.3d 795 (Kan. 2014). There the defendant had been charged with distributing methamphetamine. *Id.* at 798. The charge had arisen from two Kansas statutes. One statute criminalized the distribution of controlled substances. Kan. Stat. Ann. § 21-36a05(a)(1) (2009 supp.). Another statute defined *distribute* as an "actual, constructive or attempted transfer." Kan. Stat. Ann. § 21-36a01(d) (2009 supp.). Given the two provisions, the court considered whether the State had needed to prove all three statutory methods of distribution (actual, constructive, and

9

attempted). *Castleberry*, 339 P.3d at 189. This issue turned on whether the methods of distribution constituted

- separate elements or

- different means of committing the same crime.

*Id.* at 808.

The Kansas Supreme Court characterized these as means of committing the same crime rather than as separate elements to be proven. *Id.* For this characterization, the court reasoned that

- the three statutory methods of distribution (actual, constructive, and attempted transfers) had come from a definitional provision and

- definitional provisions elaborating on elements don't require separate proof.

*Id.* at 807–08.

Here the definitional provision (§ 21-5419(c)) doesn't prohibit anything, so one can't be guilty of violating this provision. It serves only to help interpret an element of the statute governing aggravated battery (contact with another *person*). So the statute itself creates only a single crime (aggravated battery) regardless of whether the victim is an individual or a fetus.[3]

---

[3]    The government points out that § 21-5419 contains exceptions. Appellees' Resp. Br. at 29 (quoting Kan. Stat. Ann. § 21-5419(b)). The government's point is unclear. The exceptions identify situations where the definitional provision doesn't apply. But with or without exceptions, § 21-5419 is only a definitional provision.

**2.    Kansas caselaw shows that the definitional provision creates means rather than elements.**

But let's assume for the sake of argument that uncertainty remains. We'd then consider the state's caselaw to determine whether jury unanimity is required for classification of the victim. *Mathis*, 136 S. Ct. at 2249; *United States v. Degeare*, 884 F.3d 1241, 1251 (10th Cir. 2018); *see* p. 8, above. If the jury must unanimously agree on whether the victim is a fetus or individual born alive, the victim's classification would generally constitute an element; if jury unanimity isn't required, we'd generally consider aggravated battery a single crime regardless of the victim's classification. *Degeare*, 884 F.3d at 1252.

No one has suggested that Kansas law requires a jury to unanimously decide whether the victim was born alive. So we'd ordinarily consider the victim's classification as a means rather than an element.

Though jury unanimity isn't required for the victim's classification, the government insists on the existence of distinct crimes under *State v. Seba*, 380 P.3d 209 (Kan. 2016). There the defendant was convicted of two counts of murder: one for killing a pregnant woman, the other for killing the woman's unborn child. *Id.* at 213. The count involving the unborn child stemmed from the definitional provision, which stated that the term *person* includes an unborn child. *Id.* (quoting Kan. Stat. Ann. § 21-5419(a)(2) (2015 supp.)). But the defendant wasn't charged with violating the

11

definitional provision. He couldn't violate the definitional provision because it didn't criminalize anything; it just clarified the meaning of a statutory term. *See* Kan. Stat. Ann. § 21-5419 (2015 supp.).

Granted, the definitional provision allowed the State to charge two counts rather than one. But the existence of two counts doesn't translate into two separate crimes, for elements and units of prosecution are "conceptually distinct." *United States v. Rentz*, 777 F.3d 1105, 1117 (10th Cir. 2015) (en banc) (Matheson, J., concurring).[4]

*Seba* thus doesn't show with certainty that the status of the victim constitutes an element. And any remaining uncertainty would require us to peek at the record "for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256–57 (cleaned up). But the parties don't suggest any value from peeking at the record.

The government does argue that Mr. Adams had battered his girlfriend rather than a fetus. But the identity of Mr. Adams's victim wouldn't affect classification of the victim as an element or means. Given

---

[4]    The government points out that the Kansas legislature enacted § 21-5413 and § 21-5419 at different times. But separate passage doesn't mean that the sections create separate crimes. Section 21-5419 serves only to further define the term *person* for existing criminal provisions (including the existing provision for aggravated battery). *See* Kan. Stat. Ann. § 21-5419(c).

the resulting uncertainty, we consider the classification of the victim as simply a means of committing a single crime (aggravated battery). *See* pp. 8–9, above.

## IV.    The guideline for a *crime of violence* covers only crimes against individuals born alive.

Because aggravated battery in Kansas constitutes only a single crime, we must determine whether commission of that crime would always constitute a *crime of violence* under the federal sentencing guidelines. As noted, Kansas's crime of aggravated battery is committed whenever the victim is either an individual or a fetus. *See* Part III(B), above. So we must consider whether the guidelines' definition of a *crime of violence* includes crimes against fetuses. The guideline definition covers crimes against *persons. See* Part I, above. In this context, does *person* include a fetus? To answer, we look to the Dictionary Act.[5] There, the term *person* refers only to an individual born alive.

The Dictionary Act contains a provision bearing on the meaning of administrative regulations like the sentencing guidelines: 1 U.S.C. § 8(a).

---

[5]    Mr. Adams also argues that we should consider the Model Penal Code, dictionary definitions, and the common law. Although Mr. Adams uses these sources to support our conclusion, we need not consider them because the Dictionary Act sufficiently clarifies the meaning of the term *person*. We decline to consider these additional arguments for reversal, "confin[ng] ourselves to deciding only what is necessary to the disposition." *Whitehouse v. Illinois Cent. Railroad Co.*, 349 U.S. 366, 372–73 (1955).

*See Mistretta v. United States*, 488 U.S. 361, 393–94 (1989) (stating that the U.S. Sentencing Commission is an administrative agency of the United States); *Stinson v. United States*, 508 U.S. 36, 45 (1993) (referring to the sentencing guidelines as regulations). This provision states that the term *person* "include[s] . . . every infant member of the species homo sapiens who is born alive." 1 U.S.C. § 8(a). At first glance, this definition appears to *exclude* crimes from the guideline provision for *crimes of violence* when the victims are not yet born. Kansas's statute on aggravated battery includes crimes against victims not yet born.

But the government argues that a list following the word *includes* is ordinarily illustrative, not exhaustive. This argument overlooks the purpose underlying the Dictionary Act's definition of a *person*.

The original version of the Dictionary Act did not use the term *include* or *born alive*. The House of Representatives amended the Dictionary Act to specify that *persons* "include . . . [those] born alive." Born Alive Infants Protection Act of 2002, H.R. 2175, 107th Cong. (2002). By amending the Act to cover those born alive, Congress was addressing a controversy involving infants born alive after partial birth abortions. H.R. Rep. No. 107-186, at 2 (2001). Through this amendment, Congress clarified that an infant would be considered a *person* "regardless of whether the infant [had] survived an abortion." *Id.* at 3. In this context, Congress used the word *include* to emphasize that the term *person*

14

extended to any infant born alive, not to suggest that a fetus could be a *person* without being born alive.

Case law confirms this reading of the Dictionary Act. The two circuits to interpret the Dictionary Act have held that § 8 defines *person* in a way that excludes fetuses. *United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011); *Gomez Fernandez v. Barr*, 969 F.3d 1077, 1087 (9th Cir. 2020).[6]

So the Dictionary Act supports interpretation of the sentencing guideline for *crimes of violence* to exclude crimes against fetuses, and Kansas's crime of aggravated battery can be committed against fetuses. The Kansas crime would thus ordinarily include at least some conduct not covered by the guideline.

The government suggests that this analysis creates an anomaly. Because § 21-5419 also applies to Kansas's murder statutes, the government suggests that this analysis takes even a crime like first-degree murder outside the definitional bounds of a *crime of violence*. But other circuits have held that some state murder statutes fall outside the sentencing guidelines' provisions for a *crime of violence*. *See, e.g., United*

---

[6]    None of our precedential opinions have squarely addressed whether the statutory term *person* includes fetuses. But in an unpublished opinion, we interpreted the Dictionary Act to "suggest[] that the statutory term 'individual' applies only after birth." *Sheff v. U.S. Dep't of Justice–Civil Div.*, 734 F. App'x 540, 542 (10th Cir. 2018) (unpublished).

15

*States v. Vederoff*, 914 F.3d 1238, 1248 (9th Cir. 2019) ("[S]econd-degree murder under Washington law is not a crime of violence under . . . U.S.S.G. § 4B1.2(a)(2)."); *United States v. McCollum*, 885 F.3d 300, 309 (4th Cir. 2018) (holding that federal conspiracy to commit murder in aid of racketeering was not a crime of violence under § 4B1.2(a)).

Ultimately, though, we need not concern ourselves with the guidelines' classification of murder. Our issue involves aggravated battery, not murder. Even if the classification of murder is counterintuitive, the categorical approach can sometimes generate counterintuitive results. *See United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019) ("[T]he categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad."); *United States v. Castillo*, 36 F.4th 431, 444 (2d Cir. 2022) (stating that if the court's decision creates the anomalous result that attempted assault is not a crime of violence, the anomaly would "result[] at least in part from the rigidity of the categorical approach").[7]

---

[7]    Mr. Adams points out that the guidelines treat murder as an enumerated offense that always constitutes a *crime of violence*. U.S.S.G. § 4B1.2(a)(2). The government doesn't disagree, but this provision applies only if the criminal statute matches the generic definition of *murder*. *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017). We need not decide whether the generic definition of a hypothetical statute on first-degree murder would encompass the killing of a fetus. *Cf. Gomez Fernandez v. Barr*, 969 F.3d 1077, 1087 (9th Cir. 2020) (concluding "that the federal generic definition of murder, as reflected in [the federal murder statute, 18 U.S.C. § 1111], excludes the killing of an unborn fetus"). For

16

Despite the occasional anomalies from the categorical approach, its application here is straightforward: The Kansas statute expressly allows a conviction of aggravated battery when the victim is a fetus, and the federal sentencing guidelines define batteries as *crimes of violence* only when the victim had been born alive. A mismatch thus exists between the elements of the state crime and the guidelines' definition of a *crime of violence*. So aggravated battery is not a crime of violence.

## V.    Kansas's criminal statute unambiguously covers aggravated battery against fetuses.

The government argues that if someone batters a fetus, the battery would almost certainly victimize the pregnant mother and this battery would necessarily include the use of force against another person. But this argument would not affect our application of the categorical approach.

Battery against the pregnant woman and the fetus would constitute two incidents of the same crime. One of those (the battery against the pregnant woman) would presumably constitute a crime of violence. But that's not the issue here: we must consider the minimum conduct that would permit a conviction. So our issue is whether the State would consider the other incident (the battery against the fetus) as an aggravated

---

example, if a first-degree murder statute were to outlaw both the killing of a fetus and an individual born alive, the guidelines might not consider the offense a *crime of violence*. But this is a function of the categorical approach, which sometimes leads to odd outcomes. *See* text accompanying note.

battery. The State would consider that offense an aggravated battery because § 21-5413 unambiguously treats fetuses as *persons* under the aggravated-battery statute. *See* Part I, above. Given the clarity of Kansas law, "no legal imagination is required to see that" someone could be convicted under § 21-5413 for aggravated battery against a fetus. *United States v. Titties*, 852 F.3d 1257, 1274–75 (10th Cir. 2017).

The government's example from *State v. Seba* is instructive. *See* Part III(B)(2), above. There the victims included both a pregnant woman and her fetus, so the defendant was convicted of two incidents of murder. 380 P.3d 209, 220 (Kan. 2016). The murder of the woman would presumably constitute a crime of violence. But the killing of the fetus constituted a separate incident of murder under Kansas law. *Id.*

The existence of two criminal acts matters because we must consider not just the aggravated batteries that would unambiguously qualify as crimes of violence, but also the minimum conduct that would permit a conviction under the Kansas law. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013). That conduct included harm to fetuses, which unambiguously fell within Kansas's statute on aggravated battery.

The government's argument thus proves little. If someone batters both a fetus and the mother, one of the batteries might constitute a crime of violence but the other battery wouldn't. So the Kansas statute sweeps beyond the guidelines' definition of a crime of violence. Given the

18

mismatch between the Kansas crime and the guideline, the court shouldn't have applied the guideline for crimes of violence. We thus vacate the sentence and remand for resentencing.[8]

---

[8] Because we vacate the sentence based on a categorical mismatch, we need not address Mr. Adams's alternative argument relying on the absence of an element involving physical force.