**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAULINE RONNIESHA HILL,

    Defendant - Appellant.

No. 23-6093
(D.C. No. 5:22-CR-00077-JD-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Pauline Hill, a felon, appeals both her jury conviction and her sentence for one

count of possession of a firearm as a felon in violation of 18 U.S.C. § 922(g).  She

challenges her jury conviction on the ground that a search warrant affidavit omitted

material information related to her alibi, and that her post-search confession was thus

"fruit of the poisonous tree."  She also challenges her sentence, arguing that the

district court erred in counting her Okla. Stat. tit. 21, § 645 state convictions in her

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

sentencing calculation because § 645 is not a categorical crime of violence under the United States Sentencing Guidelines (the "Guidelines").  This is so, she argues, because § 645 includes within its scope the assault and battery of an unborn victim, and, under our precedent, the term "crime of violence" does not include any crime against unborn persons.  *See United States v. Adams*, 40 F.4th 1162, 1170 (10th Cir. 2022).  While we disagree with Hill that the district court erred in declining to suppress evidence obtained as a result of the search warrant, we agree that § 645 criminalizes the assault and battery of an unborn person with a dangerous weapon, and that § 645 is thus not a categorical crime of violence.  Accordingly, we reverse and remand for a new sentencing consistent with this opinion.

## I.

A drive-by shooting occurred in northeast Oklahoma City on the evening of December 3, 2021, at around 7:35 p.m.  Following the shooting, Oklahoma City police interviewed the victims:  two adults and a child.  The victims could not identify the shooter, but the police learned that the assailant's car was white, and the child reported that the car belonged to someone called "Sweets."  The police learned that "Sweets" was Hill's nickname, and that one of the victims was in an ongoing violent dispute with Hill.

Based on this information, the police visited Hill's home.  Spotting a car leaving her home, the police stopped it to interview the occupants.  Those occupants, Shida Tamrat (Hill's cousin) and Rickey Taylor (Hill's brother), told the officers that Hill was with Tamrat and Taylor at the time of the shooting, and that Hill thus could

not have been involved.  Tamrat and Taylor also told the police that Hill had called them earlier in the evening and asked for a ride to a mechanic.  They said they picked her up from the mechanic at around 7:15 p.m. and stayed with her at a hotel after that.

Police visited the mechanic shop that Tamrat and Taylor had mentioned and found Hill's vehicle:  a white two-door Nissan Altima with a sunroof.  Police also obtained surveillance footage from near the crime scene.  That footage showed a white two-door sedan with a sunroof, like Hill's, following the victims' car. Continuing their investigation, police obtained a search warrant for records from Hill's cell phone service provider.  Hill's cell records indicated that she was in the same part of the city as the shooting at the time it occurred, although the police could not determine her precise location.

Armed with that information, police obtained a warrant to search Hill's residence for firearms and ammunition.  The affidavit for the warrant detailed the foregoing information.  Based on that affidavit, a judge found that there was probable cause to search Hill's home.

While executing the search warrant, police found a 9mm pistol.  Accordingly, police arrested Hill for possession of a firearm as a felon.  Hill later admitted that the pistol was hers, and that, as a felon, she knew that she was not supposed to have a gun.

The United States charged Hill with possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g).  Hill moved to suppress the firearm

and her confession on the ground that the search warrant affidavit omitted material information related to her alibi, and that her confession was thus "fruit of the poisonous tree." The government argued, among other things, that no material information was omitted from the affidavit, and that the search was thus lawful. The district court denied Hill's motions to suppress, concluding that none of the information Hill identified was material because it would not have affected the probable cause assessment.

A jury then convicted her at trial.

After trial, a United States Probation Officer prepared a Presentence Investigation Report for Hill (the "PSR"). Among Hill's criminal history was a conviction in Oklahoma County District Court for the felony of assault and battery with a dangerous weapon. The PSR concluded that such a felony conviction was a "crime of violence" under the United States Sentencing Guidelines § 2K2.1(a)(4)(A), and thus calculated her base offense level to be 20 under the Guidelines. That base offense level, in combination with other factors detailed in the PSR, produced a guideline imprisonment range of forty-one to fifty-one months.

Before sentencing, the district court directed the parties to brief whether the Oklahoma state crime of assault and battery with a dangerous weapon under Okla. Stat. tit. 21, § 645 is a "crime of violence" under the Guidelines. Hill argued that such a crime applies to unborn persons under Oklahoma law, and thus is not categorically a crime of violence. Hill argued that the district court was bound by *United States v. Adams*, which employed similar reasoning to hold that a Kansas state

4

crime applied to unborn victims, and thus was not categorically a crime of violence under the Guidelines.

At sentencing, the district court determined that it was bound by *United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016), a case in which we concluded that the Oklahoma state crime of assault and battery with a dangerous weapon under § 645 is categorically a crime of violence within the meaning of the Guidelines. The district court reasoned that Oklahoma law is inconclusive regarding the status of unborn victims under § 645. Absent a clearly superseding decision from the Oklahoma state courts, the district court declined to depart from *Taylor*, and consequently ruled that § 645 was a crime of violence for sentencing purposes.

Accordingly, the district court accepted the base offense level and guidelines imprisonment range calculated by the Hill PSR. The district court sentenced Hill to forty-one months' imprisonment.

Hill filed a timely notice of appeal.

## II.

When reviewing the denial of a motion to suppress, we review factual findings for clear error and questions of law de novo. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). Whether a warrant is supported by probable cause is a question of law. *Id.*

## A.

A search warrant is void and its fruits must be suppressed if (1) "the affiant knowingly or recklessly . . . omitted material information from an affidavit in support

5

of the search warrant," and (2) an affidavit correcting "such material omissions" would "not support a finding of probable cause." *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008). A fact is material if its inclusion in the affidavit "would vitiate probable cause." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015).

"[P]robable cause 'is not a high bar.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It requires only a "fair probability" that the suspect has committed a crime. *Id.* (quotation omitted). For that reason, probable cause requires *some* evidence that a crime has been committed, but "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Id.* (quotation omitted). That is why, "in considering whether the government has shown probable cause to indict, grand juries need not hear the defendant's side of the argument," nor "any exculpatory evidence." *Id.* Even if some exculpatory evidence exists, probable cause does not dissipate unless the evidence demonstrates that "the suspicion (probable cause) . . . is unfounded." *Id.* at 1221 (quotation omitted).

**B.**

The omitted facts that Hill identifies are not material because, although they weighed against probable cause, their inclusion would not have completely vitiated a finding of probable cause. The judge who issued the warrant was presented with an affidavit that contained enough specific facts linking Hill to the shooting that there

6

was a fair probability that she committed a crime. The affidavit stated that the victims identified the color of the shooter's car as white; that one of them recognized the car as belonging to "Sweets," Hill's nickname; that security footage near the scene showed a white, two door car with a sunroof following the victims' car; that Hill owned such a car; and that Hill's cellphone was located in the general area where the shooting occurred.

Moreover, the affidavit did not omit Hill's alibi. The affidavit explained that Tamrat and Taylor had told the police that Hill was at a mechanic shop on the evening of the shooting, that they picked her up from that shop at 7:15 p.m., that they stayed with her at a hotel, and that there was "no way [ ] Hill could do the shooting as alleged." *Id.* at 52. In short, the affidavit offered competing evidence: the circumstantial evidence placing Hill at the scene, and the testimonial evidence placing her at a hotel. However, the relevant question when issuing a warrant is whether the evidence as a whole can satisfy probable cause's "not [ ] high bar." *Hinkle*, 962 F.3d at 1220. And that "does not require the fine resolution of conflicting evidence." *Id.* Given the significant circumstantial evidence implicating Hill in the shooting, we hold that there was enough evidence to establish probable cause, and that the warrant, therefore, was valid.

Hill resists this conclusion, arguing that the affidavit's omission of *additional* potentially exculpatory evidence renders it invalid. She states that the affidavit "failed to add corroborating details" for Tamrat's and Taylor's claims that Hill "had been with them that evening," such as "the time of the phone call from [ ] Hill (6:00

7

p.m.) while she was at the south side auto shop." Aplt. Br. at 13–14. Next, Hill claims that the affidavit omitted information from two witnesses at the mechanic shop that Hill "had brought her car to their shop on the evening of December 3 around 7:00 p.m., that [she] got a ride from the shop, and that her car remained there on the evening and night of December 3." *Id.* at 12. Hill also claims that the affidavit omitted the information that police found her car at the mechanic shop on the night of the shooting. *Id.*

The mere existence of corroborating evidence is not, in this context, material. The question is not whether omitted evidence "would have placed a different light on things," Aplt. Br. at 14, but is instead whether the additional evidence demonstrates that the suspicion underlying the probable cause was "unfounded." *Hinkle*, 962 F.3d at 1221. Here, the affidavit already acknowledged that Hill had multiple alibi witnesses who say she absolutely could not have committed the shooting. The alibi provided by the witnesses included specific claims about when they picked Hill up from the mechanic shop (twenty minutes before the shooting), and specific details about where they claimed to have gone. That additional evidence only bolsters the evidence already contained in the affidavit. It does not *disprove* the substantial evidence—like Hill's cell phone location—that placed her at the crime scene. As such, the additional omitted information, like a 6:00 p.m. phone call, does not demonstrate that the police's suspicion of Hill was "unfounded" in light of the countervailing evidence. And, because the additional evidence would not dissipate

8

probable cause, it is not material, and its omission does not render the search warrant void. *See Puller*, 781 F.3d at 1197.

## III.

With regard to Hill's challenge to her sentence, the relevant question of law is shared with a companion case, *United States v. Singer*, No. 23-6120, slip op. (Jan. 23, 2026). What we said there applies with equal force here. Thus, without repeating our analysis from that opinion, we hold that the district court erred in calculating Hill's sentence to the extent it increased her sentence by classifying her § 645 convictions as crimes of violence.

## IV.

For the foregoing reasons, we **AFFIRM** Hill's conviction, but we **REVERSE** the district court's sentencing calculation and **REMAND** for resentencing consistent with this opinion.

Entered for the Court


Allison H. Eid
Circuit Judge